C. E. ARBAUGH, *et al.*

*v.*

C. D. RAINES, EDNA L. RAINES, *Executrix, etc.*

(No. 12986)

Submitted September 21, 1971. Decided November 16, 1971.

*Marshall & St. Clair, James W. St. Clair,* for appellants.

*Clarence L. Watt,* for appellees.

CAPLAN, PRESIDENT:

This is an appeal from a judgment of the Circuit Court of Putnam County in an action instituted by C. E. Arbaugh, L. C. Richmond, J. T. Gallaspie, Charles D. Raines, H. J. Banks, Ronald L. Coyner, J. C. Hoffman, V. I. Snider, Gladys Hartman and the Charleston Memorial Hospital Association, a corporation, to recover from C. D. Raines

their alleged shares of a certain sum of money paid to Raines by the State Road Commission of West Virginia. Edna L. Raines, the appellant, is the executrix of the estate of C. D. Raines, deceased, the defendant below, against whom judgment was entered.

C. D. Raines, a pharmacist by profession, had for many years been active in the purchase of oil and gas leases, the development of wells thereon and the sale of the products therefrom. Pursuant to this business activity he, on March 17, 1943, entered into an agreement with Thomas Fowler and Dora Fowler, his wife, and Leah P. Handley whereby he leased all the oil and gas in and underlying a certain tract of land owned by the lessors containing 236 acres, more or less. This lease was recorded in the Office of the County Clerk of Putnam County, C. D. Raines being noted as the sole lessee.

Subsequently, by an undated agreement consummated between August 28, 1943 and September 24, 1943, C. D. Raines sold to the plaintiffs and certain others shares in a well he was to drill for oil or gas on the Fowler lands. Therein the appellant was designated as "the owner of a certain oil and gas lease" on the Fowler tract. Under this agreement Raines was to cause to be drilled a well for oil or gas, said well to be designated well No. 1 on the Fowler Lease. Further, Raines was to act as trustee for the plaintiffs, to obtain sales contracts for gas or oil produced from the well, collect the proceeds from said sales and make distribution of the proceeds to the lessors and the parties to this agreement.

The plaintiffs agreed to pay $250.00 for each 32nd interest in the well. Among other provisions of the agreement, the Fourth paragraph provided that after royalty fees are paid to the lessors and certain prescribed fees to Raines, the remainder of the proceeds "be divided into 32/32nds and distributed to each of the parties of the second part [plaintiffs] in proportion to the interest purchased as hereinafter set out at the right of the signature of such purchaser."

Pursuant to the latter agreement the Fowler well was drilled and gas was found in paying quantities. Production was shut off until January, 1945 when a pipeline was constructed to connect to a United Fuel Gas Company line.

Giving rise to this controversy was a certain Release and Agreement, dated October 8, 1962, entered into by and between C. D. Raines and the State Road Commission of West Virginia. In the construction of Interstate Route 64, a controlled access highway, the road commission sought to acquire Raines' access to said highway and accomplished its aim under the said Release and Agreement. Under the terms thereof Raines "does hereby fully release all rights of access from said Interstate 64 to and from said demised premises and to and from said oil and gas well now located thereon and does further fully release all of its rights under the lease hereinbefore mentioned within the controlled access area * * *."

As consideration for the above release, Raines was paid the sum of $10,500.00. Contending that they are entitled to share in that sum paid by the State Road Commission, the plaintiffs instituted this action. It was stipulated by the parties that the matter would be determined by the court on depositions and briefs of the parties. Thereafter, the court, deciding that the plaintiffs were entitled to share in the $10,500.00, entered judgment in their favor. It is from that judgment that this appeal is prosecuted.

The principal assignment of error is the court's finding "that plaintiffs were holders of such an interest in the acreage comprising the leasehold amounting to an interest in land as to entitle them to share in the proceeds paid by the State Road Commission." The appellant contends that the plaintiffs purchased a share of the proceeds to be realized from the production and sale of gas and nothing more; that they have no interest in the leasehold and cannot therefore share in compensation received by the owner thereof for the right of way released; that he, Raines, was the sole owner of the leasehold; and that the

plaintiffs are receiving their proportionate share of the profits from the production of gas from Fowler well No. 1.

The appellees assert that they are the proportional owners of the oil and gas in place and that as a consequence they are entitled to a proportionate share of the sum paid for a right of way over the leasehold property.

The basic determination to be made here is the nature of the interest acquired by the plaintiffs under their agreement with C. D. Raines.

An examination of the agreements involved in this case reveals that C. D. Raines was the sole owner of the Fowler lease. In the agreement whereby he acquired the right to drill for oil and gas, he alone is designated as the lessee. In the agreement with the plaintiffs, Raines is described as the "owner of a certain oil and gas lease". Finally, in the agreement with the State Road Commission, he is noted to be *the* lessee of the property involved. Therefore, unless Raines has conveyed shares of his leasehold estate to the plaintiffs, he alone was entitled to the proceeds received under the release of his right of access to the property so leased.

C. D. Raines, by entering into the lease, acquired a right to explore for oil and gas and if successful to produce and sell the fruits of his venture. It has been held that this is a conditional contingent sale of oil and gas in place, which becomes absolute only upon the finding of oil or gas by the purchaser. The sale is then fully consummated and the lessee becomes the owner with the right to convert the minerals into personalty. *Lawson* v. *Kirchner,* 50 W.Va. 344, 40 S.E. 344. The lessee's interest is inchoate and contingent until discovery of oil or gas, but upon such discovery the right to produce becomes a vested right. *Crawford* v. *Ritchey,* 43 W.Va. 252, 27 S.E. 220. The Court said in *Carper* v. *United Fuel Gas Co.,* 78 W.Va. 433, 89 S.E. 12: "Until oil or gas is found, the lease gives a mere right of exploration, and the lessee has no vested estate. After discovery of minerals, he has a conditional estate for years, in the nature of a tenancy of the surface." See

also *Steelsmith* v. *Gartlan,* 45 W.Va. 27, 29 S.E. 978. In the instant case, upon the discovery of gas, Raines acquired a vested interest in the form of a chattel real. *Drainer* v. *Travis,* 116 W.Va. 390, 180 S.E. 435.

Did C. D. Raines transfer to the plaintiffs any interest in his leasehold estate? An examination of the agreement between them readily requires an answer in the negative. First, and aside from the agreement, the language of Code, 1931, 36-1-1, dictates the manner in which such transfer or conveyance must be made. It directs that "No estate of inheritance or freehold, or for a term of more than five years, in lands, or any other interest or term therein of any duration under which the whole or any part of the corpus of the estate may be taken, destroyed, or consumed * * *, shall be created or conveyed unless by deed or will." Suffice to say that the agreement referred to above is neither a deed nor a will. No words of transfer or conveyance are contained therein. It could not, therefore, convey an interest in the lessee's estate.

Since the rights and duties of the parties under the agreement are set out above, it is not necessary to repeat them here. Basically, C. D. Raines agreed to drill a well; provide materials; upon production of gas, obtain sales contracts; collect for the sale of gas; and make proper distribution of the proceeds of the sales to the plaintiffs. So far as the plaintiffs are concerned, the agreement provides for payment by them for shares; payment to the lessors and Raines, and that the remainder of the "proceeds" be divided into 32/32nds and distributed in proportion to their respective interests.

The agreement between these parties reflects a practice common in the area of oil and gas development. A lessee obtains a lease which he retains as his own property. In order to get funds with which to produce oil or gas, he sells shares in a proposed well to be drilled on his leasehold estate. The money from the sale of such shares is pooled to pay for the costs of drilling the well, and, if the venture is successful, the shareholders divide the profits

from the production of that well. That they are entitled to nothing more, so far as the leasehold estate is concerned, is demonstrated by the fact that if the lessee drilled another well on such leased land, in which they had no financial interest, they would receive no part of the profits from such well. In the instant case C. D. Raines merely sold shares in the well. He did not sell an interest in his leasehold estate and, if another well produced oil or gas thereon, these plaintiffs would not be entitled to share in the profits therefrom.

There are certain rights incident to the ownership of oil and gas in place. It has been heretofore clearly shown that C. D. Raines, upon the discovery of gas, acquired a vested right to the minerals underlying the leased lands. When one owns title to the oil and gas in place he may perform all acts necessary to discover and produce such minerals; he has the right to lease and dispose of such oil and gas; and he has the right to receive bonuses and delay rentals. *Avery* v. *Moore,* 150 W.Va. 136, 144 S.E.2d 434; *Davis* v. *Hardman,* 148 W.Va. 82, 133 S.E.2d 77. All of these rights C. D. Raines acquired. However, neither the agreement with Mr. Raines nor any other matter in the record of this case gave to the plaintiffs these rights in relation to the oil and gas underlying the subject land. Clearly they had no claim to the ownership of the oil and gas in place.

The agreement between C. D. Raines and the plaintiffs, in clear and unambiguous language, disclosed that said plaintiffs were to receive their proportionate share of the remainder of the undivided *proceeds* from the sale of gas and oil from said well. Nothing else was offered. Nothing else was intended. No interpretation of this agreement is warranted or needed. In Point 1 of the Syllabus of *Cotiga Development Company* v. *United Fuel Gas Company,* 147 W.Va. 484, 128 S.E.2d 626, the Court said: "A valid written instrument which expresses the intent of the parties in plain and unambiguous language is not subject to judicial construction or interpretation but will be applied and enforced according to such intent." See *Little Coal Land*

*Company* v. *Owens-Illinois Glass Company,* 135 W.Va. 277, 63 S.E.2d 528.

In his deposition C. D. Raines stated that the road constructed by the State Road Commission divided into two pieces the land he had under lease. However, the following questions by counsel and answers by Raines appear in the record. "Q. Did the building of the Interstate highway in any way interfere with the production of the Fowler well? A. No, sir. Q. Did the building of the Interstate highway in any way reduce the production of the Fowler well? A. Let me go back: They did cut the line in two but they paid me the damages, Nello Teer when they was constructing. Q. Now, these damages you got from Nello Teer, what did you do with them? A. I added it to the proceeds from the wells." It is clear from the evidence that the production of the Fowler well was in no way impeded by acquisition of the right of way by the State Road Commission. Another access road to the well was available and the profits realized were not thereby diminished.

For the reasons stated and in view of the authorities cited herein we are of the opinion that the plaintiffs were entitled only to their proportionate share of the proceeds from the sale of gas from the Fowler well; that they had no interest in the leasehold estate owned by C. D. Raines; and that said plaintiffs are not entitled to share in the $10,500.00 received by C. D. Raines as compensation for releasing a portion of his leasehold estate.

The judgment of the Circuit Court of Putnam County is reversed and the case is remanded to that court with directions that it enter a judgment in favor of the defendant in accordance with the principles enunciated in this opinion.

*Reversed and remanded
with directions.*