662 S.E.2d 711

**Johnnie HOOVER, Plaintiff Below, Appellant,**

v.

**Peter K. MORAN, Defendant Below, Appellee.**

No. 33460.

Supreme Court of Appeals of West Virginia.

Submitted Feb. 27, 2008.

Decided March 14, 2008.

---

114

Stephen P. Meyer, Meyer & Ford, Charleston, for Appellant.

Benjamin L. Bailey, Christopher A. Morris, Bailey & Glasser, Charleston, for Appellee.

PER CURIAM:

Johnnie Hoover, appellant/plaintiff below, appeals from an order of the Circuit Court of

Kanawha County that dismissed his complaint against Peter K. Moran, appellee/defendant below. The circuit court dismissed the action under Rule 12(b)(6) of the West Virginia Rules of Civil Procedure for failure to state a claim against Mr. Moran in his individual capacity. Here, Mr. Hoover contends that his complaint adequately stated a cause of action against Mr. Moran in his individual capacity. In a cross-appeal filed by Mr. Moran, he contends that the circuit court committed error in reinstating Mr. Hoover's complaint after it was initially dismissed, under Rule 41(b) of the West Virginia Rules of Civil Procedure, for inactivity for more than one year. After a careful review of the record, briefs, and consideration of the arguments by the parties, we affirm the trial court's order reinstating the case under Rule 41(b), but reverse the order dismissing the case under Rule 12(b)(6).

## I.

### FACTUAL AND PROCEDURAL BACKGROUND

This case arises out of Mr. Hoover's employment with Princess Beverly Coal Company (hereinafter "Coal Company"). Mr. Hoover worked as a mechanic, welder and equipment operator for the Coal Company from July 29, 1984, through February 29, 2000. The president of the Coal Company during this period was Mr. Moran. Mr. Hoover asserted in his complaint that on several occasions from the mid–1980s until the early 1990s, the Coal Company experienced financial difficulties in paying employee wages and purchasing equipment. As a consequence of the financial difficulties, Mr. Hoover alleged that on several occasions Mr. Moran borrowed money from him to help meet the obligations of the Coal Company.

The loan that is relevant to this appeal occurred on or about February 5, 1985. At that time, and at the request of Mr. Moran, Mr. Hoover loaned the Coal Company $20,000.00. The loan was to be repaid within sixty days. However, Mr. Hoover asserts that a few days before the loan was due to be repaid, Mr. Moran requested an extension of time to repay the loan. Further, Mr. Hoover asserted in the complaint that the consideration for the extension and late repayment was a promise made by Mr. Moran that 10% of the profits from the sale of the Coal Company would be paid to Mr. Hoover should the business ever be sold. This agreement was never reduced to writing. The loan was eventually paid off.

The complaint further alleged that on February 13, 1997, Mr. Moran and Mr. Hoover entered into negotiations regarding Mr. Hoover's claim for an interest in the sale proceeds of the Coal Company. Those negotiations proved fruitless. Subsequent to the alleged negotiations, on or about February 18, 1999, the Coal Company was sold to a buyer for a purported sum of $11,600,000.00.

On April 16, 2002, Mr. Hoover filed the instant action against both Mr. Moran and the Coal Company alleging a breach of the 1985 oral agreement to pay him 10% of the profits from the sale of the Coal Company. In July of 2002, a joint motion to dismiss was filed by Mr. Moran and the Coal Company.

While the joint motion to dismiss was pending, the Coal Company filed for bankruptcy in November of 2002. As a consequence of the bankruptcy filing, an automatic stay was entered on the claim against the Coal Company. On March 29, 2004, the circuit court entered a voluntary agreed order dismissing the Coal Company from the action with prejudice. Thereafter on July 15, 2005, the circuit court *sua sponte* entered an order under Rule 41(b) dismissing the case against Mr. Moran due to inactivity in the case for more than a year.

On May 24, 2006, Mr. Hoover filed a motion seeking to reinstate the action against Mr. Moran. Subsequent to such hearing, the circuit court entered an order on August 4, 2006, reinstating the action against Mr. Moran.

After the case was reinstated, the parties supplemented their briefs relating to the previously filed Rule 12(b)(6) motion to dismiss. Specifically, Mr. Moran argued in his supplemental brief that the complaint should be dismissed because it failed to assert a claim against him in his individual capacity and/or because, to be enforceable, the alleged agreement was required to be reduced to writing.

Subsequent to the hearing, the circuit court issued an order on December 8, 2006, dismissing the case on the ground that the complaint failed to allege a cause of action against Mr. Moran in his individual capacity.[1] On December 14, 2006, Mr. Hoover filed a motion for reconsideration under Rule 59 of the West Virginia Rules of Civil Procedure.[2] The circuit court denied the motion by order entered December 29, 2006. This appeal was timely filed on April 16, 2007.

## II.

### STANDARD OF REVIEW

■ We are called upon to consider the circuit court's dismissal of the complaint against Mr. Moran under Rule 12(b)(6). "Appellate review of a circuit court's order granting a motion to dismiss a complaint is *de novo*." Syl. pt. 2, *State ex rel. McGraw v. Scott Runyan Pontiac–Buick, Inc.,* 194 W.Va. 770, 461 S.E.2d 516 (1995). We have also indicated that "[t]he trial court, in appraising the sufficiency of a complaint on a Rule 12(b)(6) motion, should not dismiss the complaint unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Syl. pt. 3, *Chapman v. Kane Transfer Co.,* 160 W.Va. 530, 236 S.E.2d 207 (1977).[3] Thus, "[t]he policy of the rule is . . . to decide cases upon their merits, and if the complaint states a claim upon which relief can be granted under any legal theory, a

motion under Rule 12(b)(6) must be denied." *John W. Lodge Distrib. Co., Inc. v. Texaco, Inc.,* 161 W.Va. 603, 605, 245 S.E.2d 157, 158–59 (1978). This Court, as well as the trial court, must construe "the factual allegations in the light most favorable to the plaintiff[ ]." *Murphy v. Smallridge,* 196 W.Va. 35, 36, 468 S.E.2d 167, 168 (1996) (citing *State ex rel McGraw v. Scott Runyan Pontiac–Buick,* 194 W.Va. at 775–76, 461 S.E.2d at 521–22). Further, we must "draw all reasonable inferences in favor of the plaintiff." *Conrad v. ARA Szabo,* 198 W.Va. 362, 369, 480 S.E.2d 801, 808 (1996).

■ This case also requires the Court to review Mr. Moran's cross-assignment of error, regarding the trial court's reinstatement of the case after it was dismissed under Rule 41(b). "A circuit court's ruling on a motion for reinstatement will not be reversed on appeal absent a clear showing of an abuse of discretion." Cleckley, et al., *Litigation Handbook,* § 41(b), at 1055. *See also* Syl., *Snyder v. Hicks,* 170 W.Va. 281, 294 S.E.2d 83 (1982) ("'A trial court, upon a motion to reinstate a suit or action, . . . is vested with a sound discretion with respect thereto. . . .' Syl. pt. 4, *White Sulphur Springs, Inc. v. Jarrett,* 124 W.Va. 486, 20 S.E.2d 794 (1942), *in part.*").

With these standards in mind, we now turn to the merits of the issues presented by this appeal.

---

1. The circuit court's order expressly noted that the court excluded from consideration all matters submitted outside the pleadings, and therefore did not convert the motion into one for summary judgment pursuant to Rule 56. "Even though a trial court permits affidavits and other evidence to be entered into the record, so long as the court does not base its judgment on matters outside of the pleadings it may grant a dismissal pursuant to Rule 12(b)(6)." Franklin D. Cleckley, Robin J. Davis, and Louis J. Palmer, Jr., *Litigation Handbook on West Virginia Rules of Civil Procedure,* § 12(b)(6), at 33 (2d ed. 2006) (Supp.2007).

2. Insofar as the Rule 59 motion was filed within ten days of the dismissal order, the appeal period was stayed pending a ruling on the motion. *See* Cleckley, et al., *Litigation Handbook,* § 59(e), at 1316 ("A motion under Rule 59(e) filed within ten days of judgment being entered, suspends the finality of the judgment and makes the judgment

unripe for appeal. When the time for appeal is so extended, its full length begins to run from the date of entry of the order disposing of the motion.").

3. We acknowledge the fact that the United States Supreme Court has disapproved of federal courts using the "no set of facts" standard in appraising a Rule 12(b)(6) motion. *See Bell Atl. Corp. v. Twombly,* ⎯ U.S. ⎯, ⎯, 127 S.Ct. 1955, 1969, 167 L.Ed.2d 929 (2007) ("The phrase is best forgotten as an incomplete, negative gloss on an accepted pleading standard: once a claim has been stated adequately, it may be supported by showing *any set of facts* consistent with the allegations in the complaint." (emphasis added)). For the purposes of the decision in this case, we need not decide whether this Court will adopt the *Twombly* standard. *See Highmark West Virginia, Inc. v. Jamie,* 221 W.Va. 487, 491 n. 4, 655 S.E.2d 509, 513 n. 4 (2007) ("We decline to preemptively settle that issue in this opinion.").

## III.

## DISCUSSION

### A. Cause of Action Against Mr. Moran in His Individual Capacity

 The first issue we must address concerns Mr. Hoover's contention that the circuit court erred in finding that his complaint did not set out a cause of action against Mr. Moran in his individual capacity. The circuit court's order stated that "the Court finds no allegations in the Complaint against Peter Moran as an individual, and therefore grants the Motion to Dismiss." The parties do not dispute that the caption of the complaint named Mr. Moran as a defendant, along with the Coal Company, but failed to state in what capacity Mr. Moran was being sued. This fact alone, however, is not dispositive.

 We have previously held that "[u]nder Rule 9(a) [of the] West Virginia Rules of Civil Procedure, it is not necessary to aver the capacity of a party to sue or be sued." Syl. pt.1, *Musgrove v. Hickory Inn, Inc.*, 168 W.Va. 65, 281 S.E.2d 499 (1981).[4] It has been said that "[t]he justification for not requiring capacity ... to be plead, is that this information is generally revealed in the body of the pleadings[.]" Cleckley, et al., *Litigation Handbook*, § 9(a), at 258. In Syllabus point 1 *of Marion v. Chandler*, 139 W.Va. 596, 81 S.E.2d 89 (1954), we held, in part, that "[w]hether words used in connection with the name of a ... defendant in a

4. The text of Rule 9(a) provides as follows:
 It is not necessary to aver the capacity of a party to sue or be sued or the authority of a party to sue or be sued in a representative capacity or the legal existence of an organized association of persons that is made a party. When a party desires to raise an issue as to the legal existence of any party or the capacity of any party to sue or be sued or the authority of a party to sue or be sued in a representative capacity, the party desiring to raise the issue shall do so by specific negative averment, which shall include such supporting particulars as are peculiarly within the pleader's knowledge.

5. Courts are not confined to exclusively examining the body of the complaint to determine in what capacity a defendant is sued. This Court has previously held that "[a]n action may be treated as an individual or representative one[,] as its true nature is disclosed upon an inspection of the whole record." Syl. pt. 2, *Massey v.*

case are to be considered as descriptive of the person, or of the character in which he ... is sued, is to be determined from all the allegations of the pleading filed by the plaintiff." *See also Gray v. University of Kansas Med. Ctr.*, 715 F.Supp. 1041, 1043 (D.Kan. 1989) ("[I]n general, [it] could greatly assist the court to prevent confusion, as has resulted in the present case, if they would simply state in what capacity an individual is being sued in the caption of the complaint. However, a defendant's capacity need not be plead.... The allegations of the complaint must be examined to determine the nature of plaintiff's cause of action."). We must therefore turn our attention to the body of the complaint to determine whether a cause of action was fairly set out against Mr. Moran in his individual capacity.[5]

Mr. Moran argues that the following allegation found in the complaint clearly established that the alleged agreement, regarding the 10% interest in the profits of the sale of the Coal Company, was done by him in his official capacity as president of the Coal Company:

A few days before said [$20,000.00] loan was due, defendant Peter Moran in his capacity as President of Princess Beverly Coal Company requested an extension of time to repay the loan. The consideration for this extension and late repayment was a promise made by Peter Moran that 10%

*Payne*, 109 W.Va. 529, 155 S.E. 658 (1930). Further, as pointed out by the United States Supreme Court,

 In many cases, the complaint will not clearly specify whether [defendants] are sued personally, in their official capacity, or both. The course of proceedings in such cases typically will indicate the nature of the liability sought to be imposed.

*Kentucky v. Graham*, 473 U.S. 159, 167 n. 14, 105 S.Ct. 3099, 3106 n. 14, 87 L.Ed.2d 114 (1985) (internal quotations and citation omitted). *See also Abdur–Rahman v. Michigan Dep't of Corrs.*, 65 F.3d 489, 491 (6th Cir.1995) (plaintiff's response to defendant's motion for summary judgment provided sufficient notice that defendant was being sued in his individual capacity). Insofar as the circuit court only reviewed the complaint, we restrict our analysis to the complaint.

of the profits would be given to the plaintiff if the company was ever sold.

We do not view the above allegations with the clarity that Mr. Moran proposes. At best, the above allegations are ambiguous. True, the first sentence clearly alleges that Mr. Moran was acting in his official capacity when he requested an extension of time to repay the loan. However, the second sentence is less clear. The second sentence does not state whether Mr. Moran was acting in his official or individual capacity when he allegedly promised to give Mr. Hoover 10% of the profits from the sale of the Coal Company. In other words, we must look to other allegations in the complaint to see in what capacity Mr. Moran may have acted in making the promise.

The following allegations found in the complaint shed light on whether or not Mr. Moran was being sued in his individual capacity.

On February 13, 1997, defendant Peter Moran, in his own behalf and as President of Princess Beverly Coal Company, entered into negotiations with plaintiff to satisfy him with his claim of his equitable interest in the Coal Company, which offer was never finalized or reduced to writing and signed by the parties.

Defendants breached their agreement with the plaintiff, made in 1985, as aforesaid, by failing to account to the plaintiff the terms of the sale of Princess Beverly Coal Company, and to render an accounting to him as to his share of the sale proceeds.

As a direct and proximate result of defendants' breach of their agreement to the plaintiff, plaintiff has been damaged in an unspecified amount, which breach occurred on or about February 18, 1999 and has continued thereafter.

WHEREFORE, plaintiff prays that he be awarded judgment against defendants jointly and severally[.]

By viewing the above allegations found in the complaint in the light most favorable to Mr. Hoover, and by drawing all reasonable inferences in his favor, we believe that the allegations sufficiently placed Mr. Moran on notice that he was being sued in his individual capacity. *See Loggins v. Franklin County, Ohio,* 218 Fed.Appx. 466, 470 (6th Cir.2007) ("[Defendant] was named in [plaintiff's] third amended complaint 'in his official capacity as Chief Deputy, Corrections Division with the Franklin County Sheriff's Department.' [Plaintiff] alleged [defendant] was acting in this capacity 'at all times relevant to this Complaint.' Despite this language, the district court construed the language in the complaint as sufficient to put [defendant] on notice in his individual capacity."). Consequently, we find that the complaint does in fact, set out a cause of action against Mr. Moran in his individual capacity.[6]

 Mr. Moran further contends that should the complaint be found to set out a cause of action against him personally, the action is barred because the agreement was required to be in writing by the provisions of the statute of frauds contained in W. Va.

---

**6.** The parties have briefed the issue of whether or not the "corporate veil" doctrine shields Mr. Moran from liability. This Court has indicated the following regarding piercing the corporate veil.

In a case involving an alleged breach of contract, to "pierce the corporate veil" in order to hold the shareholder(s) actively participating in the operation of the business personally liable for such breach to the party who entered into the contract with the corporation, there is normally a two-prong test: (1) there must be such unity of interest and ownership that the separate personalities of the corporation and of the individual shareholder(s) no longer exist (a disregard of formalities requirement) and (2) an inequitable result would occur if the acts are treated as those of the corporation alone (a fairness requirement).

Syl. pt. 3, *Laya v. Erin Homes, Inc.,* 177 W.Va. 343, 352 S.E.2d 93 (1986). We need not address the corporate veil issue on the merits for several reasons. First, the issue ·was not raised before the circuit court. Second, the *Laya* test involves seeking to hold shareholders liable for corporate debt. However, there are no allegations in the complaint that Mr. Moran was a shareholder in the Coal Company. In fact, Mr. Moran's brief has indicated that he was not a shareholder in the Coal Company. Third, even if Mr. Moran was a shareholder in the Coal Company, the allegations in the complaint do not seek to hold him liable in such capacity. The complaint alleges that Mr. Moran sought extension of the loan payment as president of the Coal Company, but made a personal promise, not as president of the corporation, to give Mr. Hoover 10% of the profits from the sale of the corporation.

Code § 46–8–319 (1979) (Repl.Vol.1993)[7] of the Uniform Commercial Code Investment Securities.[8] Although the circuit court did not address the issue of the statute of frauds in its dismissal order, Mr. Moran, in fact, raised and briefed the issue before the circuit court. Further, our cases have made clear that "it is permissible for us to affirm the granting of [dismissal] on bases different or grounds other than those relied upon by the circuit court." *Gentry v. Mangum,* 195 W.Va. 512, 519, 466 S.E.2d 171, 178 (1995). *See Subcarrier Communications, Inc. v. Nield,* 218 W.Va. 292, 297, 624 S.E.2d 729, 734 (2005); *Aluise v. Nationwide Mut. Fire Ins. Co.,* 218 W.Va. 498, 504, 625 S.E.2d 260, 266 (2005).

The relevant text of W. Va.Code § 46–8–319 set out the following limitations on the sale of investment securities:

A contract for the sale of securities is not enforceable by way of action or defense unless:

(a) there is some writing signed by the party against whom enforcement is sought or by his authorized agent or broker sufficient to indicate that a contract has been made for sale of a stated quantity of de-

scribed securities at a defined or stated price.[9]

(Footnote added). *See also* Syl. pt. 1, *Quinn v. Beverages of West Virginia, Inc.,* 159 W.Va. 571, 224 S.E.2d 894 (1976) ("An option to purchase corporate stock constitutes a contract for the sale of securities, as contemplated by W. Va.Code, 1931, 46–8–319, as amended, and if the requirements of that code provision are not met, such contract falls within the Statute of Frauds set forth in the above code section and is unenforceable."). Assuming, without deciding, that the writing requirement of W. Va.Code § 46–8–319 was applicable to the facts in the present case, we agree with Mr. Hoover that the doctrine of promissory estoppel precludes dismissal of his case under that statute.

▮▮▮ This Court set out the principles governing the doctrine of promissory estoppel in *Everett v. Brown,* 174 W.Va. 35, 321 S.E.2d 685 (1984), as follows:

A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce the action or forbearance is enforceable not-

---

7. This statute, W. Va.Code § 46–8–319 (1979) (Repl.Vol.1993), appears to have been repealed in 1995. At the same time that the statute was repealed, the Legislature enacted a statute, W. Va.Code 46–8–113 (1995) (Repl.Vol.2004), which now permits a contract for the sale or purchase of a security to be made orally. We have previously indicated that "[t]he rights and duties of the parties to a contract are controlled by the law in effect at the time the contract was executed." *McGinnis v. Cayton,* 173 W.Va. 102, 105, 312 S.E.2d 765, 768 (1984). Consequently, we will consider Mr. Moran's argument under W. Va. Code § 46–8–319, because that statute was in place when the alleged agreement was made.

8. W.Va.Code § 46–8–319

is merely one of many statutes of frauds in West Virginia law. The most frequently cited statute of frauds is W. Va.Code, 55–1–1 [1923]; however, W. Va.Code, 36–1–3 [1923] requires contracts for the sale or lease of land to be in writing; W. Va.Code, 46–1–206 [1963] provides that contracts for the sale of certain types of personal property be in writing; W. Va. Code, 46–2–201 [1963] requires contracts for the sale of goods for a price of more than $500 be in writing; ... and, W. Va.Code, 46–9–203 [1963] requires security interests in property under certain circumstances to be in writing.

Any statutory provision that requires agreements to be in writing can be referred to generally as a "statute of frauds." All of these statutes display common characteristics and they all create similar problems.

*Everett v. Brown,* 174 W.Va. 35, 38, 321 S.E.2d 685, 688–89 (1984).

9. Mr. Moran contends that the alleged agreement between the parties constituted the sale of uncertificated securities, as that term was defined by W. Va.Code § 46–8–102 (1979) (Repl.Vol.1993). This statute defined an uncertificated security as follows:

(b) An "uncertificated security" is a share, participation, or other interest in property or an enterprise of the issuer or an obligation of the issuer which is

(I) not represented by an instrument and the transfer of which is registered upon books maintained for that purpose by or on behalf of the issuer;

(ii) of a type commonly dealt in on securities exchanges or markets; and

(iii) either one of a class or series or by its terms divisible into a class or series of shares, participations, interests, or obligations.

W. Va.Code § 46–8–102(b). This statute was rewritten in 1995 and subsequently amended in 2006.

withstanding the Statute of Frauds if injustice can be avoided only by enforcement of the promise. The remedy granted for breach is to be limited as justice requires.

In determining whether injustice can be avoided only by enforcement of the promise, the following circumstances are significant: (a) the availability and adequacy of other remedies, particularly cancellation and restitution; (b) the definite and substantial character of the action or forbearance in relation to the remedy sought; (c) the extent to which the action or forbearance corroborates evidence of the making and terms of the promise, or the making and terms are otherwise established by clear and convincing evidence; (d) the reasonableness of the action or forbearance; (e) the extent to which the action or forbearance was foreseeable by the promisor.

Syl. pt. 3, *Everett, id.* Insofar as we are only reviewing the body of the complaint in this case, we find that there are adequate allegations in the complaint to satisfy the promissory estoppel requirements of *Everett.*

The complaint in this case alleges that Mr. Hoover agreed to extend the deadline for the repayment of $20,000.00 that he loaned to the Coal Company, in exchange for a promise by Mr. Moran of giving him 10% of the profits from the sale of the Coal Company. After this agreement was made, Mr. Hoover alleged in the complaint that Mr. Moran continued borrowing money from him, on behalf of the Coal Company, that was in excess of $31,000.00. Mr. Hoover also asserted that he continued to make his personal assets available to Mr. Moran because of the promise to pay him 10% of the profits from the sale of the Coal Company. The complaint further alleges that even though Mr. Hoover fulfilled his part of the agreement with Mr. Moran, and continued to provide Mr. Moran with needed funds for the Coal Company, when the Coal Company was sold Mr. Moran re-

fused to pay him the promised 10% of the profits from the sale of the Coal Company. To the extent that Mr. Hoover's allegations are true, an injustice would occur were we to allow the statute of frauds contained in W. Va.Code § 46–8–319 to defeat his cause of action. We believe that under the doctrine of promissory estoppel, Mr. Hoover should have his day in court notwithstanding the possible application of the statute of frauds writing requirement of W. Va.Code § 46–8–319. Indeed, this Court has observed that the underlying purpose of a statute of frauds is "to prevent the fraudulent enforcement of unmade contracts, not the legitimate enforcement of contracts that were in fact made." *Timberlake v. Heflin,* 180 W.Va. 644, 648, 379 S.E.2d 149, 153 (1989) (citation omitted). *See also Fry Racing Enters., Inc. v. Chapman,* 201 W.Va. 391, 395, 497 S.E.2d 541, 545 (1997) (" 'It is well settled, that courts of equity will notwithstanding the statute of frauds enforce oral contracts ... which have been partially performed[.]' " (quoting Syl. pt. 2, *Kimmins v. Oldham,* 27 W.Va. 258 (1885))); *Bennett v. Charles Corp.,* 159 W.Va. 705, 711, 226 S.E.2d 559, 563 (1976) ("[A] defendant may be estopped to assert the Statute of Frauds in defense of an action for enforcement where certain limited circumstances exist. Those limited situations include fraud and part performance."); Syl. pt. 1, *Ross v. Midelburg,* 129 W.Va. 851, 42 S.E.2d 185 (1947) ("A party to an oral contract ..., to which the statute of frauds is applicable, may, by conduct on his part, be estopped in equity to assert the statute of frauds as a defense to such contract.").

### B. Mr. Moron's Cross–Appeal

■ Mr. Moran has argued in his cross-appeal [10] that this Court should reverse the circuit court's order reinstating the action after it was dismissed under Rule 41(b) due to inactivity for more than one year.[11] We disagree.

---

**10.** Rule 10(f) of the West Virginia Rules of Appellate Procedure provides:

Appellee, if he is of the opinion that there is error in the record to his prejudice, may assign such error in a separate portion of his brief and set out authority and argument in support thereof. Such cross assignment may be made notwithstanding the fact that appellee did not

file a separate petition for an appeal within the statutory period for taking an appeal. Appellant may answer the cross assignment of error in his reply brief.

**11.** We should note that Mr. Moran's brief incorrectly asserted that the case was dismissed for failure to prosecute. However, that was not the

To begin, this Court held in Syllabus point 2 of *Dimon v. Mansy*, 198 W.Va. 40, 479 S.E.2d 339 (1996), in part, that "[b]efore a court may dismiss an action under Rule 41(b), notice and an opportunity to be heard must be given to all parties of record." We have further held that "[u]nder [Rule] 41(b), in order to reinstate a cause of action which has been dismissed ..., the plaintiff must move for reinstatement within three terms of entry of the dismissal order and make a showing of good cause which adequately excuses his neglect in prosecution of the case." Syl. pt. 1, *Brent v. Board of Trs. of Davis & Elkins Coll.*, 173 W.Va. 36, 311 S.E.2d 153 (1983), *overruled on other grounds by Dimon v. Mansy*, 198 W.Va. 40, 479 S.E.2d 339.

We need not labor long on the issue presented as a cross-appeal. The circuit court's reinstatement order indicated that "[a]fter careful consideration the Court finds that neither the plaintiff or plaintiffs counsel received notice of dismissal pursuant to Rule 41(b) ... and that notice was required." In other words, the circuit court found that its

dismissal order violated *Dimon*, because neither Mr. Hoover nor his counsel received a pre-dismissal notice. Mr. Moran has failed to present any evidence to show that Mr. Hoover or his counsel in fact received the required *Dimon* pre-dismissal notice. Therefore, we have no basis to disturb the trial court's decision to reinstate the case.[12]

## IV.

## CONCLUSION

We affirm the trial court's order reinstating Mr. Hoover's case under Rule 41(b). We reverse the order dismissing Mr. Hoover's case under Rule 12(b)(6).

Affirmed, in part; Reversed, in part; and Remanded.

---

basis of the dismissal. The trial court dismissed the case due to inactivity for more than one year. It has been observed that

> There are four grounds for dismissal of a plaintiffs action under Rule 41(b): (1) failure of the plaintiff to prosecute, (2) failure of the plaintiff to comply with the rules or any order of court, (3) inactivity for more than one year, and (4) the plaintiff is delinquent in the payment of accrued court costs. It has been held that nothing in Rule 41(b) demands that a trial court must dismiss an action with prejudice, if justice and the nature of the cause do not so require.

Cleckley, et al., *Litigation Handbook*, § 41(b), at 1048. It has also been noted that

> To some extent "failure to prosecute" and "inactivity for more than one year" overlap. The distinction between the two grounds for dismissal lies in the fact that "failure to prosecute" is broader than "inactivity for more than

one year." While the former may include the conduct of the latter, the latter does not embrace all of the types of conduct that may come under the former.

*Id.*

12. Mr. Moran has artfully sidestepped the *Dimon* pre-dismissal notice basis for reinstatement, and argues that Mr. Hoover failed to present evidence of good cause as to why the case was dormant for more than one year. However, whether or not Mr. Hoover had good cause for allowing the case to be inactive for more than a year is irrelevant, because *Dimon* required that he receive notice of the dismissal prior to such action being taken. In other words, Mr. Hoover merely had to demonstrate that he did not receive the *required* notice in order to have the case reinstated. The good cause standard is only invoked once proper notice and an opportunity to be heard have been afforded prior to dismissal.