**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 12-2273**

CLIFTON G. VALENTINE,

Plaintiff – Appellant,

v.

SUGAR ROCK, INC.; GERALD D. HALL; TERESA D. HALL,

Defendants – Appellees.

Appeal from the United States District Court for the Northern District of West Virginia, at Clarksburg. Irene M. Keeley, District Judge. (1:10-cv-00193-IMK)

Argued: December 10, 2013          Decided: March 12, 2014

Before KING, GREGORY, and FLOYD, Circuit Judges.

Published Order of Certification to the Supreme Court of Appeals of West Virginia. Judge King prepared the Order, in which Judge Gregory and Judge Floyd joined.

**ARGUED:** James Scott Huggins, THEISEN BROCK, LPA, Marietta, Ohio, for Appellant. W. Henry Lawrence, IV, STEPTOE & JOHNSON PLLC, Bridgeport, West Virginia, for Appellees. **ON BRIEF:** Daniel Patrick Corcoran, THEISEN BROCK, LPA, Marietta, Ohio, for Appellant. Amy Marie Smith, William J. O'Brien, STEPTOE & JOHNSON PLLC, Bridgeport, West Virginia, for Appellees.

# ORDER OF CERTIFICATION TO THE
# SUPREME COURT OF APPEALS OF WEST VIRGINIA

KING, Circuit Judge:

Availing ourselves of the privilege afforded by the State of West Virginia through the Uniform Certification of Questions of Law Act, West Virginia Code sections 51-1A-1 through 51-1A-13, we hereby request that the Supreme Court of Appeals of West Virginia exercise its discretion to answer the following certified question of law:

> Whether the proponent of his own working interest in a mineral lease may prove his entitlement thereto and enforce his rights thereunder by demonstrating his inclusion within a mining partnership or partnership in mining, without resort to proof that the lease interest has been conveyed to him by deed or will or otherwise in strict conformance with the Statute of Frauds.

We perceive that the answer to the foregoing question of West Virginia law may be determinative of the cause now pending before us. Moreover, it appears that the decisions of the Supreme Court of Appeals of West Virginia provide no controlling precedent dispositive of the question. To fully illustrate the nature of the controversy out of which the question arises, we next recite the relevant facts.

I.

A.

Clifton G. Valentine filed this diversity action on November 8, 2010, in the Northern District of West Virginia, alleging that he is the owner of certain fractional working interests in four Ritchie County mining partnerships: Cuthright Oil & Gas Co. (stated working interest of 3/32), Iams Gas Co. (2/32), Iams Oil Co. (5/32), and Keith Gas Co. (1/32). Three wells produce oil and gas on Cuthright's leasehold, with single wells in production for each of the other three partnerships on their respective, discrete leaseholds.

Named as defendants in Valentine's lawsuit are Sugar Rock, Inc., which is the operator of the wells, and two of its officers, Gerald D. Hall and Teresa D. Hall (collectively, "Sugar Rock"). Valentine demands an accounting and seeks compensatory and punitive damages, together with reimbursement of his attorney fees and litigation costs. On January 13, 2011, Sugar Rock answered the complaint and filed a counterclaim "in excess of $14,191.00," representing the cumulative operating expenses attributable to Valentine's asserted working interests in the six wells. See J.A. 27.[1]

---

[1] Citations herein to "J.A. ___" refer to the contents of the Joint Appendix filed by the parties to the appeal underlying this Order of Certification.

Valentine maintains that he purchased the working interests from Frank "F.A." Deem, the original owner of the leaseholds, in the late 1950s. For about forty years, Valentine received his proportionate share of the net proceeds generated by the well operations. Those payments stopped in 1999, however, when Frank Deem's son and successor in interest, William "W.A." Deem, sold the majority interest in the partnerships to Sugar Rock. After Sugar Rock became the operator and managing partner of the partnerships, the wells began to operate at a net annual loss, in amounts reflected on the tax documents (IRS Schedule K-1 to Form 1065) that each partnership has continued to deliver annually to Valentine. Sugar Rock billed Valentine for his share of the deficiencies, but he refused to remit payment. In 2001, Sugar Rock filed suit in state court against Valentine to recover the costs incurred to that point; the action was dismissed in 2004 for failure to prosecute.

The parties engaged in discovery in the district court, after which Sugar Rock moved for summary judgment on the ground that Valentine could produce no written instrument conveying him ownership of the working interests in dispute. In support of its position, Sugar Rock observed at the outset that, in accordance with West Virginia law, the creation of the four leaseholds transferred interests in real property. See J.A. 127 (citing Syl. Pt. 1, McCullough Oil, Inc. v. Rezek, 346 S.E.2d

4

788 (W. Va. 1986)); cf. Miller v. Schwartz, 354 N.W.2d 685, 689 (N.D. 1984) (explaining that "[t]he interest acquired by the lessee under an ordinary oil and gas lease is known as a working interest and is an interest in real property" (citation and internal quotation marks omitted)).

Next, Sugar Rock advanced the uncontroversial corollary that any subsequent assignment by the lessee of a portion of its working interest in an oil and gas lease similarly conveys an interest in real property. See J.A. 127 (citing 37 C.J.S. Statute of Frauds § 77 (2011)); see also Exxon Corp. v. Breezevale Ltd., 82 S.W.3d 429, 436 (Tex. App. 2002) (instructing that, "[u]nder Texas law, a conveyance of a working interest in oil and gas is a real property interest"); Fry v. Farm Bureau Oil Co., 119 N.E.2d 749, 750 (Ill. 1954) (same, applying Illinois law). Given that the working interests asserted by Valentine are real property interests, Sugar Rock maintained that their purported transfer could only be effected by a writing contemplated by the West Virginia Statute of Frauds:

> No estate of inheritance or freehold, or for a term of more than five years, in lands, or any other interest or term therein of any duration under which the whole or any part of the corpus of the estate may be taken, destroyed, or consumed, except for domestic use, shall be created or conveyed unless by deed or will.

5

W. Va. Code § 36-1-1. Thus, Sugar Rock reasoned, Valentine's want of proper documentation evidencing ownership of the working interests in question doomed his claim. See J.A. 128 (citing Arbaugh v. Raines, 184 S.E.2d 620, 623 (W. Va. 1971), which held that a written agreement between the lessee and investors conveying shares in a gas well enterprise and providing for the distribution of proceeds was "neither a deed nor a will" transferring to the investors any interest in the minerals in place).

In response, Valentine disavowed the "direct ownership interest in real estate" that might have been transferred via a conforming writing indicating the conveyance of the subject working interests. J.A. 307. Valentine contended instead that he possessed "an ownership interest in a partnership" arising under operation of law, and thus an indirect ownership interest in the four oil and gas leases. Id. The specific portion of each working interest to which he is entitled need not, according to Valentine, be established in strict conformance with the Statute of Frauds, but can be proved by parol evidence and by the parties' course of conduct.

A "mining partnership" of the sort Valentine posits, may be formed "where tenants in common of mines or oil leases . . . actually engage in working the same, and share, according to the interest of each, the profit and loss." Childers v. Neely, 34

6

S.E. 828, 829 (W. Va. 1899) (citation and internal quotation marks omitted). In such instances, "the partnership relation subsists . . . though there is no express agreement . . . to be partners or to share profits and loss." Id. (citation and internal quotation marks omitted). From Childers and the learned legal literature, the district court distilled three essential elements of a mining partnership: (1) co-ownership of lands or leases constituting a property interest; (2) joint operation thereof; and (3) sharing of profits and losses. See J.A. 777; see also Drake v. O'Brien, 130 S.E. 276, 280 (W. Va. 1925) (confirming that "[a] mining partnership exists between the tenants in common of a mine who work it together and divide the profits in proportion to their several interests").

The district court, by its Memorandum Opinion and Order (the "Opinion"), determined that Valentine's assertion of an interest in the Sugar Rock mining partnerships failed at the threshold, in that he had not satisfied the first essential element. See Valentine v. Sugar Rock, Inc., No. 1:10-cv-00193, 2012 WL 4320850 (N.D. W. Va. Sept. 18, 2012). In Childers, there was no dispute that the prospective partners each owned a properly documented share of the subject property prior to joint development of the minerals in place. By contrast, Valentine was unable to produce a writing in conformance with the Statute of Frauds. The district court concluded, therefore, that

7

Valentine could not properly evidence receipt of the disputed working interests, which in turn precluded him from demonstrating the requisite ownership interest in any of the subject leases. See Opinion 13, 20-21. The court consequently granted Sugar Rock's motion and entered summary judgment on its behalf. Valentine timely appealed by notice filed on October 12, 2012. We possess jurisdiction over Valentine's appeal pursuant to 12 U.S.C. § 1291.

B.

1.

During the pendency of this appeal, on April 8, 2013, Valentine filed a contested motion to supplement the record with pleadings and additional materials filed in a putative class action in state court against the defendants herein by nine other purported owners of working interests in the four mining partnerships. See Washburn v. Sugar Rock, Inc., No. 11-C-61 (Cir. Ct. Ritchie Cnty.). Valentine's motion was deferred pending oral argument.

In the meantime, by its memorandum Order of July 19, 2013 (the "Washburn Order"), the state circuit court denied the defendants' motions for judgment on the pleadings and for summary judgment, and it granted the plaintiffs' motion for partial summary judgment. In so ruling, the court declared that the plaintiffs were partners in the mining partnerships and

8

owned the claimed working interests, notwithstanding that such assertions could not be corroborated by deed or will. Valentine submitted the Washburn Order in accordance with the rule permitting us to be notified of "pertinent and significant authorities [that] come to a party's attention" while the appeal is yet pending. See Fed. R. App. P. 28(j). Inasmuch as the state court materials previously offered for our consideration will likely be useful in understanding the Washburn Order, we are satisfied to grant Valentine's motion to supplement the record.[2]

In considering the motions before it, the circuit court acknowledged that Childers requires each partner in a mining

---

[2] The district court's summary judgment order in favor of Sugar Rock, entered in September 2012, concomitantly denied Valentine's motion to voluntarily dismiss his complaint without prejudice, see Fed. R. Civ. P. 41(a)(2), so that he could join the putative class action in Ritchie County. Valentine contends on appeal that the court should have granted his dismissal motion or, failing that, stayed further action — including consideration of Sugar Rock's motion for summary judgment — to await developments in the state court proceedings. We reject Valentine's assertions of error in this regard, and, with respect to the dismissal issue, adopt the analysis set forth by the district court in its unpublished Opinion. Our disposition of the above-described aspect of Valentine's appeal removes any alternative basis to disturb the judgment below and leaves for resolution solely the question that we certify today, thereby ensuring that we do not ask the Supreme Court of Appeals of West Virginia for an advisory opinion. See State ex rel. Advance Stores Co., Inc. v. Recht, 740 S.E.2d 59, 64 (W. Va. 2013) (reinforcing Court's determination that it "will not answer a certified question if, in doing so, [it] would have to render a non-controlling, advisory answer").

9

partnership to possess an ownership interest in the land or lease being exploited, but also observed the opinion's silence as to whether such an interest may arise and be evidenced through some writing other than a deed or will, or, indeed, through no writing at all. See Washburn Order 5 (recognizing that Childers "does not say that the mines, leases, or lands of a mining partnership must be titled in the name of each of the individual mining partners"). The circuit court instead regarded the Supreme Court's post-Childers opinion in Lantz v. Tumlin, 81 S.E. 820 (W. Va. 1914), as more helpful to its analysis.

In Lantz, one of two participants in an alleged mining partnership brought a bill in equity to dissolve the entity and settle accounts. The defendant demurred on the grounds that there was no written partnership agreement and that only the plaintiff's name appeared on the property deed. The Supreme Court of Appeals affirmed, in pertinent part, the circuit court's entry of judgment in favor of the plaintiff, concluding that the evidence left "no room for doubt" that the purported partnership had in fact existed. Lantz, 81 S.E. at 820. The evidence to which the Court referred consisted of interactions and correspondence between the parties, buttressed by the use of the partnership name on financial records and on contracts undertaken. See id. at 820-21. The Court rejected the

10

defendant's invocation of the Statute of Frauds in defense, instructing that "where persons engage in a joint enterprise for profit, by associating themselves together as partners or otherwise, a relationship of trust and confidence is thereby established, and that as between them in the conduct of the joint or partnership business the statute of frauds has no application." Id. at 821 (citations omitted).

Persuaded by Lantz, the Circuit Court of Ritchie County in Washburn denied Sugar Rock's motion for judgment on the pleadings. The circuit court perceived that the result in Lantz was consistent with West Virginia authorities permitting partnership real estate to be treated as personalty for purposes of implementing equitable remedies such as dissolution and settlement. See Washburn Order 8 (citing, inter alia, Brown v. Gray, 70 S.E. 276, 277 (W. Va. 1911)). Further, according to the court, the plaintiffs were entitled to partial summary judgment regarding their claims to the working interests in dispute. The court ruled that — in the absence of any evidence to the contrary — ownership had been sufficiently demonstrated by the plaintiffs' affidavits, appended with documents of record establishing each partnership, detailing the various interests therein, and subsequently assigning those interests. See id. at 10-12. The affidavits additionally incorporated the Schedule K-

11

1s that Sugar Rock had, from 1999 through 2011, delivered each year to the plaintiffs. See id. at 12.

2.

The district court in the case at bar was likewise presented with the opportunity to consider the import and applicability of Lantz. The court concluded that Lantz supported the proposition made apparent in Childers that a mining partnership may arise through words and by conduct. See Opinion 21 (recognizing that "there is, manifestly, no dispute that a written partnership agreement is not required for individuals to form a common law mining partnership" (citation omitted)). According to the court, however, Lantz cannot be interpreted as permitting, in derogation of the Statute of Frauds, the conveyance of the property interest necessary to form a mining partnership: "What is required, however, is an interest in property, an interest which [Valentine] does not purport to have." Id.

True enough, Valentine abandoned all pretense that he had been directly conveyed by deed or will any property interest in the leases; he maintained that his working interest instead derived indirectly from his proportional participation in the partnership, which owns the leases. Though the district court indicated that the absence of a preexisting property interest documented by deed or will forecloses, ab initio, the creation

12

of a "mining partnership," it did not consider the possibility that its chicken-or-the-egg conundrum might be avoided if West Virginia law were construed to recognize a "partnership in mining," that is, the formation of an ordinary partnership that happens to have as its primary purpose the exploitation of minerals. Such an approach could help to explain the result in Lantz, where a partnership was deemed to exist notwithstanding that one of the partner's names was nowhere to be found on the subject lease.

We discern, however, another rationale potentially supporting the Lantz decision. In that dispute, the real estate owner of record sued to hold his partner — whose alleged interest in the same real estate was undocumented — liable for the indebtedness of the partnership. In order to prevail, then, the plaintiff was constrained to stipulate to the defendant's property interest. A stipulation, as the Supreme Court of Appeals has explained, "is a judicial admission. As such, it is binding in every sense, preventing the party who makes it from introducing evidence to dispute it, and relieving the opponent from the necessity of producing evidence to establish the admitted fact." Lawyer Disciplinary Bd. v. Morgan, 717 S.E.2d 898, 906 (W. Va. 2011) (citation and internal quotation marks omitted).

Given the plaintiff's admission in Lantz, consistent with the entirety of the supporting evidence, it can hardly be said that relieving the defendant therein of his partnership obligations for want of a conforming writing would have served the purpose of the Statute of Frauds, which is "to prevent the fraudulent enforcement of unmade contracts, not the legitimate enforcement of contracts that were in fact made." Hoover v. Moran, 662 S.E.2d 711, 719 (W. Va. 2008) (citations and internal quotation marks omitted); see also Timberlake v. Heflin, 379 S.E.2d 149, 153 (W. Va. 1989) (instructing that "a pleading in a civil case may satisfy the requirement of a memorandum" evidencing a contract for the sale or lease of land).

In the matter before us, however, we face perhaps a more typical situation, in that the plaintiff urges a declaration of his ownership interest in realty not evidenced by deed or will, such declaration being vigorously opposed by the owner of record. The particular facts underlying the case at bar persuade us that we may appropriately certify the question we now confront.[3]

---

[3] Even if the difference in procedural posture that potentially distinguishes this matter from Lantz is deemed to be of no legal significance, our resort to the certification process is nonetheless reasonable and appropriate. In that instance, the district court's Opinion and the Washburn Order entered by the Circuit Court of Ritchie County manifest irreconcilable outcomes though both courts have sought to apply
(Continued)

14

II.

In light of the foregoing, we identify the controlling question of West Virginia law to be this: Whether the proponent of his own working interest in a mineral lease may prove his entitlement thereto and enforce his rights thereunder by demonstrating his inclusion within a mining partnership or partnership in mining, without resort to proof that the lease interest has been conveyed to him by deed or will or otherwise in strict conformance with the Statute of Frauds. We acknowledge that the Supreme Court of Appeals of West Virginia may reformulate the question. All of the parties in this matter are represented by counsel, whose names and addresses are provided hereunder.

―――――――――――――

the same precepts of West Virginia law to the identical Ritchie County properties. As our distinguished colleague Judge Widener reminded us in Denny v. Seaboard Lacquer, Inc., 487 F.2d 485, 489 (4th Cir. 1973), the principles of federalism first identified by the Supreme Court of the United States in Erie Railroad Co. v. Tompkins, 304 U.S. 64 (1938), impose upon us the duty to decide diversity actions through the faithful application of state law, as we discern it to the best of our ability. The parties before us on appeal, as well as the additional, non-diverse plaintiffs involved in the Ritchie County litigation, are each entitled to have the controlling question of West Virginia law properly decided. In view of the importance of the question and the significant likelihood that it will recur as oil and gas exploration and development continues on the upswing in West Virginia, we are of the opinion that the state's Supreme Court of Appeals ought to be afforded the opportunity to resolve it.

15

For the Plaintiff-Appellant:         For the Defendants-Appellees:

James Scott Hughes              W. Henry Lawrence, IV
Daniel Patrick Corcoran         William James O'Brien
THEISEN BROCK, LPA              STEPTOE & JOHNSON, PLLC
424 2nd Street                  400 White Oaks Boulevard
Marietta, OH  45750             Bridgeport, WV  26330


                              III.

     Accordingly, pursuant to the privilege made available under West Virginia law as described above, we hereby ORDER:  (1) that the question set forth herein be certified to the Supreme Court of Appeals of West Virginia for answer; (2) that the Clerk of this Court transmit to the Supreme Court of Appeals of West Virginia, under the official seal of this Court, a copy of this Order of Certification; and (3) that the Clerk of this Court forward in addition the original or copies of the record before this Court, in all or in part, as requested by the Supreme Court of Appeals of West Virginia, any and all such requests being effective upon notification by ordinary means from the Clerk of the Supreme Court of Appeals of West Virginia.

                                        QUESTION CERTIFIED