321 S.E.2d 685

**Dean EVERETT, et al.**

v.

**Larry W. BROWN, et al.**

**No. 15981.**

Supreme Court of Appeals of West Virginia.

Decided Oct. 16, 1984.

J. Burton Hunter, III, Buckhannon, Robert M. Morris, Weston, for appellants.

Terry D. Reed, Hymes & Coonts, Buckhannon, for appellees.

NEELY, Justice:

In March, 1980 Larry and Linda Brown decided to sell their house in Buckhannon, West Virginia. Mr. and Mrs. Brown contacted Mrs. Delores Wilson of Griffin Real Estate who then met Mrs. Brown at a local restaurant to discuss Griffin's listing of the Brown property. Mrs. Brown indicated that she and her husband wanted $106,000 for the house without appliances or $111,-000 with the appliances, and on 10 March 1980 the Browns signed an exclusive listing agreement with Griffin Real Estate for a period of thirty days. By its own terms, the exclusive listing agreement ended on 10 April 1980; however, the court below found that Griffin Real Estate showed the house to prospective purchasers several times after the expiration of the written exclusive listing agreement.

On or about 30 August 1980 Dean Everett, representing Griffin Real Estate, telephoned Mrs. Brown and requested permission to show her house to Mr. and Mrs. Keeney. Mrs. Brown, in turn, asked Mr. Everett to telephone Mr. Brown to determine whether he was amenable to having the house shown. There is conflict in the evidence concerning why Mr. Everett wished to show the house to the Keeneys; however, there is no conflict that Mr. Brown allowed Mr. Everett to show the house to the Keeneys on the evening of 30 August 1980.

Immediately after the Keeneys had visited the Brown house, Mr. Everett told Mr. and Mrs. Brown that the Keeneys were interested in purchasing the property, were good prospects, and could afford the house. That same evening the Keeneys told Mr. Everett that they would buy the house without the appliances for the asking price of $106,000; Mr. Everett returned to the Browns' home immediately to convey the offer.

On 8 September 1980, Mr. and Mrs. Keeney executed Griffin Real Estate's standard contract and gave Mr. Everett a check for $1,000 as earnest money. Following the delivery of the deposit and contract, Mr. Everett talked with Mr. and Mrs. Brown several times about the release of a second deed of trust on the Browns' house in favor of the Small Business Administration. The Browns did not sign the contract that had been executed by the Keeneys, ostensibly because they were uncertain about their ability to get the second deed of trust released.

Mr. Everett's final contact with Mr. and Mrs. Brown was a telephone conversation in early November, 1980 during which Mr. Everett asked Mr. Brown about his progress in securing the release. Mr. Brown told Mr. Everett that he was obtaining a release but that Griffin Real Estate was not entitled to a commission because there was no written listing agreement when the Kenneys were shown the house. On 17 October 1980, at Mr. Keeney's request, Mr. Everett returned the Keeneys' $1,000 earnest money. On 20 November 1980, Larry and Linda Brown conveyed their house in Buckhannon to Robert and Jean Keeney for $106,000.

Mr. Everett and his partner, Elaine Griffin, then sued the Browns for $5,300, or their 5% commission on the $106,000 price of the Brown house. The case was tried without a jury and the court found for the Browns and against Griffin Real Estate. Although the circuit court made extensive findings of fact and conclusions of law, the circuit court's decision is adequately reflected in the following quote from the opinion:

That on or about August 30, 1980, Dean Everett, representing the plaintiff, presented unto the defendants, a contract for the sale of the real estate in question signed by Mr. and Mrs. Keeney. The Court further finds that the defendants refused to sign this contract and at this time there was no listing agreement, oral or written, between the parties to this civil action. The Court further finds that there was no commission orally agreed upon between the parties and that no term of any listing was orally agreed upon between the parties and therefore the Court finds that no listing, either written or oral, existed between the parties as of August 30, 1980, and thereafter. The Court further finds that there was no meeting of minds between the plaintiffs and defendants with regard to any oral listing for the sale of the real estate owned by the defendants at the time in question.

We find that the trial court's findings of fact are clearly contrary to the weight of the evidence.

I

■ Part of this case consists of a swearing contest between the parties: the real estate broker and his agent, Mrs. Wilson, testified that upon the expiration of the written agreement the Browns orally agreed that the listing should continue. Larry Brown, on the other hand, testified that there was no agreement to extend the listing and that when Mr. Everett called him for permission to show his house to the Keeneys, Mr. Everett explained that the Keeneys wanted only to see the floor plan for a house they wanted to build. Because in West Virginia the findings of fact of a trial court judge sitting without a jury are accorded great weight, *Lotz v. Atamaniuk*, 172 W.Va. 116, 304 S.E.2d 20 (1983), if the oral testimony were the only evidence before us we would affirm.

However, there is other, undisputed, circumstantial evidence that leads us to conclude that Griffin Real Estate proved its case. It is agreed by everyone, for example, that Griffin showed the Brown house

three times during the listing agreement and either three or four times after the expiration of that agreement. Furthermore, the Keeneys came to the Brown house in the evening accompanied by Mr. Everett, inspected the house, and almost immediately made an oral offer to purchase at the Browns' asking price. Subsequently, Mr. Everett tendered the Keeneys a written contract, which they signed, and Mr. Everett accepted a $1,000 deposit as evidence of their good faith.

These actions on the part of Mr. Everett corroborate his version of the facts—namely, that after the expiration of the written listing agreement the Browns encouraged him to sell the property on the same terms set forth in the written agreement. It is hardly credible to us that a real estate broker would invest valuable time in showing property that he did not have good reason to believe was listed. And, it is also incredible to us that a married couple who did not want their property sold by a real estate broker would allow that broker to show their property time and time again, unless they intended to perpetrate a fraud.

■ Consequently, we find overwhelming evidence that the Browns actively encouraged Griffin Real Estate to believe that the written listing agreement was extended. Notwithstanding any conflicting testimony about what the parties or their agents said to one another, the actions of the parties themselves—Mr. Everett and his agents in showing the property and Mr. and Mrs. Brown in allowing the property to be shown—speak loudly and convincingly that there was an oral extension of the written listing.

## II

In the trial court the Browns relied upon *W. Va. Code*, 47–12–17(c) [1959] which says:

A broker or salesman who obtains a listing shall, at the time of securing such listing, give the person or persons signing such listing a true, legible copy thereof. Every listing agreement, exclusive or nonexclusive, shall have set forth in its terms a definite expiration date; it shall contain no provision requiring the party signing such listing to notify the broker of his intention to cancel such listing after such definite expiration date; however, an exclusive listing agreement may provide that upon the expiration of the exclusive feature the listing shall continue to a definite expiration date as a nonexclusive listing only.

■ *Code* 47–12–17(c) [1959] is merely one of many statutes of frauds in West Virginia law. The most frequently cited statute of frauds is *W. Va. Code*, 55–1–1 [1923]; however, *W. Va. Code*, 36–1–3 [1923] requires contracts for the sale or lease of land to be in writing; *W. Va. Code*, 46–1–206 [1963] provides that contracts for the sale of certain types of personal property be in writing; *W. Va. Code*, 46–2–201 [1963] requires contracts for the sale of goods for a price of more than $500 be in writing; *W. Va. Code*, 46–8–319 [1963] requires a written memorandum for the sale of securities; and, *W. Va. Code*, 46–9–203 [1963] requires security interests in property under certain circumstances to be in writing. Any statutory provision that requires agreements to be in writing can be referred to generally as a "statute of frauds." All of these statutes display common characteristics and they all create similar problems.

The courts have responded to the problems created by statutes of frauds by developing common law exceptions to their application. Although we have not had occasion before to speak about *W. Va. Code*, 47–12–17(c) [1959], we hold that the decisional law that governs statutes of frauds in other areas applies as well to that code section.

In the case before us the controlling law in this State may be found in *Ross v. Midelburg*, 129 W.Va. 851, 42 S.E.2d 185 (1947) where we said:

Though an oral contract for the sale of land is within the statute of frauds and is for that reason unenforceable, such an agreement may be removed from the operation of the statute by the conduct of the party who would, because of the statute, deny the binding effect of the agreement. "One may become estopped

to set up the statute by conduct sufficient to constitute an estoppel in accordance with the usual rules as to estoppel generally." 27 C.J. 338. See also 37 C.J.S., Frauds, Statute of, § 246. An equitable estoppel may be invoked to preclude a party to a contract from setting up the defense of the statute. 25 R.C.L., Statute of Frauds, Section 343. This doctrine operates to prevent the perpetration of fraud by one party to the contract upon the other party. "It is a most important principle, thoroughly established in equity, and applying in every transaction where the statute is invoked, that the statute of frauds having been enacted for the purpose of preventing fraud, shall not be made the instrument of shielding, protecting, or aiding the party who relies upon it in the perpetration of a fraud, or in the consummation of a fraudulent scheme. * * *." Pomeroy's Eq.Jur., 5th Ed., Vol. 3, Section 921. It is a broad general rule that a court of equity will not permit a party to take shelter under the defense of the statute and by so doing commit a fraud on the other party. *Brown v. Western Maryland Railway Co.*, 84 W.Va. 271, 99 S.E. 457, 4 A.L.R. 522; 25 R.C.L., Statute of Frauds, Section 343.

Applying *Ross'* principles, Mr. and Mrs. Brown are estopped by their conduct to assert the statute of frauds because they deliberately misled the plaintiffs. The plaintiffs worked to sell the Brown house and the Browns then took full and complete advantage of the plaintiffs' work. The hornbook law on estoppel in this regard may be found in *Restatement (Second) of Contracts* § 139 where the text provides:

A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce the action or forbearance is enforceable notwithstanding the Statute of Frauds if injustice can be avoided only by enforcement of the promise. The remedy granted for breach is to be limited as justice requires.

In determining whether injustice can be avoided only by enforcement of the promise, the following circumstances are significant: (a) the availability and adequacy of other remedies, particularly cancellation and restitution; (b) the definite and substantial character of the action or forbearance in relation to the remedy sought; (c) the extent to which the action or forbearance corroborates evidence of the making and terms of the promise, or the making and terms are otherwise established by clear and convincing evidence; (d) the reasonableness of the action or forbearance; (e) the extent to which the action or forbearance was foreseeable by the promisor.

All of the requirements for the application of estoppel have been met in this case. The Browns entered into a definite and specific written contract for the sale of their house that expired in April, 1980. Thereafter, by allowing the plaintiffs to continue to show their house to prospective purchasers—which everyone agrees happened either three or four times—they deliberately misled the plaintiffs into believing that the terms of the original written agreement would continue to be binding. When, in August 1980, the plaintiffs presented a couple who were willing to buy the defendants' house, the defendants took full advantage of that opportunity and sold the house to the couple presented. Certainly Griffin Real Estate changed its position and was injured; Griffin incurred expense and performed valuable work; and the ultimate purchasers were in the market for a house in the Buckhannon area and would probably have bought another of the plaintiffs' listed houses had they not been shown the Brown house first.

There is no question in this case that Griffin Real Estate was the "efficient or procuring cause of the sale of the property," *Kimmell v. Mohler*, 102 W.Va. 355, 135 S.E. 175 (1926). We conclude that: (1) an oral agreement to extend the prior written contract existed; (2) the defendants, by their conduct, are estopped to assert the statute of frauds; and, (3) the plaintiffs performed each and every obligation that they had under the oral agreement. Plain-

**40**

tiffs' damages, then, are measured by the amount of their lost profits, which in this case is their 5% commission.

■ The award to the plaintiffs of their broker's commission is in accord with the general rule that a broker is entitled to his commission when he procures a person able, ready and willing to purchase the property on the specified terms. His commission is not denied him because the seller refuses to complete the transaction, *Dotson v. Milliken*, 209 U.S. 237, 28 S.Ct. 489, 52 L.Ed. 768 (1908).

Accordingly, for the reasons set forth above we reverse the judgment of the Circuit Court of Upshur County and remand the case with directions to enter judgment in favor of the plaintiffs in the amount of $5,300 and, pursuant to *W. Va. Code*, 56–6–31 [1981], to allow interest on that sum at the statutory rate of 10% beginning 20 November 1980, the day on which the defendants conveyed their house to Mr. and Mrs. Keeney, and to award to the plaintiffs below all costs of these proceedings, including the statutory fee for prevailing in the Supreme Court of Appeals, *Code*, 59–2–14 [1966].

Reversed and remanded with directions.