# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**Lyle Brooks Griffith,**
**Plaintiff Below, Petitioner**

**vs)  No. 16-0460**  (Barbour County 14-C-37)

**BCBank, Inc.,**
**Defendant Below, Respondent**

**FILED**

**April 7, 2017**

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Lyle Brooks Griffith, by counsel Bren J. Pomponio, appeals the Circuit Court of Barbour County's April 15, 2016, order granting summary judgment to respondent. Respondent BCBank, Inc., by counsel David M. Thomas and Michael R. Proctor, filed a response in support of the circuit court's order to which petitioner submitted a reply.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

Petitioner Lyle Brooks Griffith brought this action as the executor of the estate of his father, Brooks J. Griffith ("Brooks"). Brooks was a resident of Philippi, West Virginia, and banked at BCBank, Inc. for many years. Beginning in 2006, he was suffering from dementia and was taking medication for that condition. Brooks's family hired Crystal Lynn Marple, now Crystal Gain, to care for Brooks as his home health worker. Following his wife's death, Brooks was the sole owner of the BCBank, Inc. account until petitioner was added as a joint account owner in August of 2010, at which time Brooks and petitioner executed amended checking account agreements setting forth the rights and obligations of the joint account owners and respondent. Both remained joint account owners until the account was closed on April 13, 2011.[1]

---

[1] The original agreement signed by Brooks (but not petitioner) provides that "[i]f you do not notify us of an unauthorized signature or alteration within a reasonable time (not to exceed 14 days) after we send or make available to you your statement and items: (1) you cannot assert the unauthorized signature or alteration against us, even if we are unable to show a loss due to your failure and, (2) you cannot assert any unauthorized signatures or alterations by the same wrongdoer on items paid by us after the reasonable time mentioned above elapses, but before we receive your notice. We lose those protections if we fail to exercise ordinary care in paying an item with an unauthorized signature or alteration, unless you do not notify us of the problem (continued . . .)

1

According to petitioner, Mrs. Gain and her husband embezzled funds totaling $169,000 from the BCBank, Inc. account from February of 2010 through April of 2011.[2] However, it does not appear that Brooks challenged any of the transactions during his lifetime.[3] During 2010 and through April 13, 2011, respondent made account statements available to the account owners. Each month, respondent mailed those statements, containing a detailed transaction history of all credits and debits to the account for the previous thirty days. Those statements also included copies of all checks paid from the checking account during each statement period. On April 13, 2011, the parties became aware that there were unauthorized transactions from the checking account, which is when respondent closed the checking account and moved the remaining funds to a new account that was also jointly owned by petitioner and Brooks.[4] Respondent did not pay any further transactions from the original account after that date. While petitioner alleges that Pam Golden, respondent's customer service officer, promised to reimburse petitioner for the unauthorized transactions once Mr. and Mrs. Gain were criminally adjudicated, respondent denies that this statement was made and Ms. Golden denies ever making such assurance.

On June 12, 2014, petitioner filed suit alleging that these transactions were unauthorized, asserting claims for forgery, breach of contract, breach of fiduciary duty, negligence, and estoppel. Respondent deposed petitioner and his wife, but petitioner did not depose any present or former employees of respondent. Respondent filed its motion for summary judgment in the circuit court on or about October 23, 2015, to which petitioner submitted a response and

---

within 60 days of when we send or make available to you the statement and items. . . ." The subsequent agreement is more difficult to read, but the relevant portion appears to say that "[y]ou must examine your statement of account with 'reasonable promptness.' If you discover (or reasonably should have discovered) any unauthorized payments or alterations, you must promptly notify us of the relevant facts. If you fail to do either of these duties, you will have to either share the loss with us, or bear the loss entirely yourself (depending on whether we exercised ordinary care and, if not, whether we substantially contributed to the loss. . .) You agree that the time you have to examine your statement and report to us will depend on the circumstances, but that such time will not, in any circumstance, exceed a total of 30 days from when the statement is first made available to you. You further agree that if you fail to report any unauthorized signatures, alterations, forgeries or any other errors in your account with 60 days of when we make the statement available, you cannot assert a claim against us on any items in that statement, and the loss will be entirely yours. This 60-day limitation is without regard to whether we exercised ordinary care. . . ."

[2] Crystal Lynn Gain and Silas Gain were both convicted of crimes related to this incident. As part of their sentences, they were ordered to jointly pay restitution in the amount of $60,000 to petitioner.

[3] Brooks passed away in November of 2012.

[4] Petitioner claims that respondent notified him of the suspected unauthorized transactions while the circuit court stated in its order that petitioner notified respondent of the same.

2

respondent submitted a reply. The circuit court heard oral argument on January 8, 2016. In its order granting summary judgment to respondent, entered on April 15, 2016, the circuit court found that there are no genuine issues of material fact and awarded summary judgment to respondent on all counts. With regard to forgery, the circuit court found that West Virginia Code § 46-4-406 barred petitioner from asserting claims for all of the alleged unauthorized transactions from the checking account against respondent because respondent sent and made available account statements. Thus, it found that the customer was required to exercise reasonable promptness in examining the account statements to determine whether there were any unauthorized payments. Because petitioner failed to exercise reasonable promptness in examining the account statements and reporting unauthorized transactions, petitioner was precluded from seeking reimbursement. As part of its analysis, the circuit court concluded that respondent suffered a loss from petitioner's and Brooks's failure to meet their statutory duties and that respondent paid the transactions in good faith. Further, it found that all of the allegedly unauthorized payments were made prior to respondent having notice from petitioner or Brooks and that respondent did not make any further payments after it received notice. Next, the circuit court determined that petitioner and Brooks both had more than thirty days to report any unauthorized signatures but failed to do so. As part of that reasoning, the circuit court found that because Mr. and Mrs. Gain were the only two individuals alleged to have committed forgeries from the checking account, "any subsequent transaction following their original ones in February, 2010, for Brooks and August, 2010, for [petitioner], would be precluded under the 'same wrongdoer' provision of W.Va. Code § 46-4-406(d)(2)."

The circuit court then found that all of petitioner's claims fail as a matter of law because they are barred by the applicable statutes of limitations or had been expressly or impliedly abandoned. Specifically, it found that the claims for forgery and negligence were barred by the statutes of limitations – the forgery claim had a three-year statute of limitations while the negligence claim had a two-year statute of limitations. Pointing to the possible use of the discovery rule, the circuit court found that petitioner knew on April 13, 2011, that he and/or Brooks had been injured, respondent charged the account based on the allegedly unauthorized signatures and forgeries, and respondent's transfer of funds from the checking account caused the loss to petitioner and/or Brooks. Therefore, it concluded that there was no basis to toll the limitations period under the discovery rule. The circuit court also found that there was no fraudulent concealment.

Finally, the circuit court found that petitioner's estoppel claim had been abandoned and petitioner had failed to establish any evidence to support the breach of contract claim. According to the circuit court, petitioner had abandoned his estoppel claim because he had "not even attempted to respond to or challenge the testimonial and documentary evidence included in [respondent's] Motion for Summary Judgment that demonstrates [respondent] is entitled to judgment as a matter of law." It also concluded that petitioner had wholly failed to meet his burden in establishing the essential elements for breach of contract and had only vaguely alleged that respondent breached a provision in the checking account agreement through its conduct without identifying how the agreement was breached and what particular parts of the agreement had been breached. Petitioner appeals from that order.

As we previously recognized, "'[a] circuit court's entry of summary judgment is

3

reviewed *de novo*.' Syl. pt. 1, *Painter v. Peavy*, 192 W.Va. 189, 451 S.E.2d 755 (1994)." Syl. Pt. 1, *Horton v. Prof'l Bureau of Collections of Maryland, Inc.*, 238 W. Va. 310, 794 S.E.2d 395 (2016).

On appeal, petitioner sets forth four assignments of error. First, he contends that the circuit court erred in granting summary judgment on his forgery claim where there were genuine issues of material fact regarding whether respondent exercised ordinary care and paid the forged checks and unauthorized transfers in good faith. He argues that the Uniform Commercial Code ("UCC") provides strict liability for a bank that pays an unauthorized item and that it is undisputed that respondent paid unauthorized transfers and forged checks presented by Mrs. Gain. However, petitioner admits that the UCC is inconsistent on who bears the burden of establishing that a bank paid unauthorized transfers in good faith. He further points to the Federal Bank Secrecy Act, which he claims requires banks to monitor suspicious activity in accounts in order to prevent the use of banks for illegal practices. Petitioner asserts that respondent knew or should have known of the unauthorized transfers for several reasons, including that there was a skip in the numbered sequence of checks presented by Mrs. Gain for cashing, Mrs. Gain was permitted to order additional checks over the phone, and multiple checks were written for amounts just under $500 in an apparent attempt to avoid scrutiny. Citing out-of-state federal authority, petitioner argues that ordinary care required the bank to maintain policies and procedures designed to avoid the unauthorized transfers.

West Virginia Code § 46-4-406(c)-(e), part of the UCC, provides as follows:

(c) If a bank sends or makes available a statement of account or items pursuant to subsection (a), the customer must exercise reasonable promptness in examining the statement or the items to determine whether any payment was not authorized because of an alteration of an item or because a purported signature by or on behalf of the customer was not authorized. If, based on the statement or items provided, the customer should reasonably have discovered the unauthorized payment, the customer must promptly notify the bank of the relevant facts.

(d) If the bank proves that the customer failed with respect to an item to comply with the duties imposed on the customer by subsection (c), the customer is precluded from asserting against the bank:
(1) The customer's unauthorized signature or any alteration on the item, if the bank also proves that it suffered a loss by reason of the failure; and
(2) The customer's unauthorized signature or alteration by the same wrongdoer on any other item paid in good faith by the bank if the payment was made before the bank received notice from the customer of the unauthorized signature or alteration and after the customer had been afforded a reasonable period of time, not exceeding thirty days, in which to examine the item or statement of account and notify the bank.

(e) If subsection (d) applies and the customer proves that the bank failed to exercise ordinary care in paying the item and that the failure substantially contributed to loss, the loss is allocated between the customer precluded and the

4

bank asserting the preclusion according to the extent to which the failure of the customer to comply with subsection (c) and the failure of the bank to exercise ordinary care contributed to the loss. If the customer proves that the bank did not pay the item in good faith, the preclusion under subsection (d) does not apply.

Petitioner does not dispute that neither he nor Brooks ever questioned the financial transactions at issue or that statements were regularly provided by respondent during the relevant time period. Several witnesses were unable to determine whether some of the signatures at issue on the checks were written by Mrs. Gain or Brooks, so this Court finds that petitioner failed to show that there was an issue of material fact as to whether respondent paid the transactions in good faith. Further, petitioner failed to present any evidence to this Court regarding respondent's policies and procedures in order for this Court to fully consider what safeguards were in place or were lacking regarding reporting requirements.[5] Therefore, based on the record before this Court, we find that the circuit court did not err in granting respondent's motion for summary judgment as to forgery.

Petitioner's second assignment of error is that the circuit court erred in granting summary judgment for the breach of contract claim because respondent breached the checking account agreement when it paid the unauthorized transfers. Petitioner argues that the checking account agreement is clearly a contract between the parties and the agreement at issue here provides that only signatories to the agreement may withdraw funds from the account. Citing only out-of-state authority that has not been endorsed by this Court, petitioner argues that a bank is liable under its contract of deposit for payments not properly payable due to forged signatures, endorsements, or alterations. He contends that when the evidence is considered in the light most favorable to petitioner, "the fraudulent activity would have been obvious to anyone that would have viewed the account activity[.]" Without citing to the record, petitioner asserts that respondent ultimately alerted him to the suspicious activity in April of 2011 due to "red flags," apparently blaming respondent for its failure to recognize those red flags earlier.

As this Court has previously stated, "[a] claim for breach of contract requires proof of the formation of a contract, a breach of the terms of that contract, and resulting damages." *Sneberger v. Morrison*, 235 W. Va. 654, 669, 776 S.E.2d 156, 171 (2015). While there were two checking account agreements at issue – one signed only by Brooks and the other signed by petitioner and Brooks – petitioner failed to identify before the circuit court or in its initial brief before this Court which agreement respondent allegedly violated. Further, he failed to identify any specific part of either agreement respondent allegedly violated. Petitioner also fails to acknowledge that he and Brooks did not abide by the agreements. The first agreement, signed by Brooks but not petitioner, states that if he did not notify respondent of unauthorized signatures within fourteen days he could not assert the unauthorized signatures against respondent. It also states that without that notification, Brooks could not assert any authorized signatures or alterations by the same wrongdoer on items paid by respondent after the fourteen-day period elapsed. As set forth above, witnesses were unable to determine whether certain signatures were written by Brooks or

_____

[5] This seems to be based on the fact that petitioner did not request such documents in discovery.

Mrs. Gain. The copy of the second agreement, signed by Brooks and petitioner, provided to this Court is more difficult to read. However, it appears to require Brooks and petitioner to examine their statements with "reasonable promptness" and "promptly notify" respondent of the relevant facts. It also includes the language that the time to examine the statements and report to respondent would depend on the circumstances but that "such time will not, in any circumstance, exceed a total of [thirty] days from when the statement is first made available to you." When combined with the statutory language set forth hereinabove, it is clear that petitioner was required, under both agreements and by law, to examine the account statements. Because petitioner failed to show that respondent breached the terms of one or both of the agreements, in part because he failed to point to any specific part of either agreement violated by respondent before the circuit court or this Court, we find that the circuit court did not err in granting summary judgment on this basis.

The third assignment of error identified by petitioner is his claim that the circuit court erred in granting summary judgment on the claims of forgery and negligence where there were genuine issues of fact as to whether the statute of limitations barred petitioner's claims. He argues that while respondent alerted him to the suspicious transactions in April of 2011, it was not until late 2012 or early 2013 that representatives from the bank told him that the funds allegedly wrongfully taken from the account would not be reimbursed. Petitioner states that Ms. Golden and another customer service representative for respondent repeatedly told him between 2011 and 2012 or 2013 that he would be "re-credited" after Mr. and Mrs. Gain were convicted. Therefore, he maintains that the statutes of limitation were tolled by the discovery rule. Further, he asserts that even if the circuit court concluded that petitioner knew of his claims in April of 2011, there was an issue of fact as to whether respondent's conduct prevented petitioner from pursuing his claims until late 2012. As part of this argument, petitioner addresses the issue of apparent authority due to the circuit court's finding that Ms. Golden did not have the authority to waive respondent's statute of limitations defenses.

We have consistently held that

"[i]n tort actions, unless there is a clear statutory prohibition to its application, under the discovery rule the statute of limitations begins to run when the plaintiff knows, or by the exercise of reasonable diligence, should know (1) that the plaintiff has been injured, (2) the identity of the entity who owed the plaintiff a duty to act with due care, and who may have engaged in conduct that breached that duty, and (3) that the conduct of that entity has a causal relation to the injury." Syllabus Point 4, *Gaither v. City Hosp., Inc.,* 199 W.Va. 706, 487 S.E.2d 901 (1997).

Syl. Pt. 3, *Dunn v. Rockwell*, 225 W. Va. 43, 689 S.E.2d 255 (2009). Petitioner does not challenge the fact that he knew in April of 2011 that a large sum of money had been removed from the joint BCBank, Inc. account, and he does not appear to dispute that he knew or should have known then that Mrs. Gain and/or her spouse were responsible for the transactions at issue. While he asserts that respondent's representatives told him that he would receive reimbursement of the missing funds after Mr. and Mrs. Gain were prosecuted, he unquestionably knew in April of 2011 that he had been injured, that Mr. and Mrs. Gain were the individuals who took the

money, and that Mr. and Mrs. Gain had a causal relation to the injury.

Further, "[t]o effect a waiver, there must be evidence which demonstrates that a party has intentionally relinquished a known right. . . ." Syl. Pt. 1, in part, *Potesta v. U.S. Fidelity & Guar. Co.*, 202 W.Va. 308, 504 S.E.2d 135 (1998) (quoting Syl. Pt. 2, *Ara v. Erie Ins. Co.*, 182 W. Va. 266, 387 S.E.2d 320 (1989)). Petitioner does not allege that Ms. Golden and the other customer service representative were officers, board members, or in any type of executive position with respondent; he also does not assert that he believed either representative was in such role when they allegedly made statements regarding whether he would be reimbursed for the monies taken by Mr. and Mrs. Gain.

> Apparent authority, or ostensible authority, as it is also called, is that which, though not actually granted, the principal knowingly permits the agent to exercise, or which he holds him out as possessing. In effect, therefore, an agent's apparent authority is, as to third persons dealing in good faith with the subject of the agency and entitled to rely upon such appearance, his real authority, and it may apply to a single transaction, or to a series of transactions. . . . Agency by representation or estoppel, sometimes designated as "apparent agency", involves a case in which there may be no agency in fact, but where the principal or employer holds out or represents a person to be his agent or employee, and a third party or parties rely thereon, in which case the person making the representation is estopped to deny the agency.

*Gen. Electric Credit Corp. v. Fields,* 148 W. Va. 176, 182, 133 S.E.2d 780, 783-84 (1963) (quotation marks and citations omitted). In considering that law in a recent opinion, this Court stated that "[i]n seeking to show apparent agency, a person also must adduce evidence that he or she believed that the alleged agent was acting on the authority of another and this belief was reasonable under the circumstances." *All Med, LLC v. Randolph Engineering Co., Inc.*, 228 W. Va. 634, 641, 723 S.E.2d 864, 871 (2012). In the instant case, Ms. Golden testified that she did not have the authority to promise reimbursement and denied making such promise. When petitioner was asked about Ms. Golden's authority to make such promise, he responded, "I don't think she did. I think she just was the messenger in the middle." Therefore, it is clear he did not believe she had the authority to make such promise. Petitioner does not point to any documentary evidence regarding the authority of Ms. Golden or the other representative or allege that he requested to speak with anyone at the management level of respondent. Because it is clear that the statute of limitations began to run in April of 2011 and petitioner did not file a complaint until June of 2014, we find that the circuit court property granted summary judgment to respondent on petitioner's claims for forgery and negligence.

Petitioner's fourth and final assignment of error is that the circuit court erred in concluding that petitioner abandoned his estoppel claim when he failed to present evidence and argument in support of each element of that claim. He argues that he presented evidence in support of his estoppel claim and included argument in support of his claim in his briefs before the circuit court. As part of that argument, he rephrases his assertions regarding apparent authority, stating that he acted upon the customer service representatives' representations to his detriment.

In his complaint, petitioner alleged that respondent represented that it would return the funds upon adjudication of Mrs. Gain and that in reliance on respondent's representations, petitioner delayed enforcement of his father's rights to have the funds returned. In addition, he asserts that respondent knew or should have known its representations were false, that petitioner had a reasonable expectation that respondent's representations were accurate, and petitioner was injured by respondent's representations. While count five of the complaint is entitled estoppel, petitioner did not allege therein exactly how respondent was estopped. In respondent's motion for summary judgment, it asserts that it is entitled to summary judgment on the estoppel claims because petitioner failed to make a prima facie showing of the necessary elements. After setting forth the elements of estoppel, respondent analyzed the facts of the case under the standards set forth by this Court in syllabus point 3 of *Everett v. Brown*, 174 W. Va. 35, 321 S.E.2d 685 (1984).[6] In response to respondent's motion for summary judgment below, petitioner stated that respondent asserted three arguments in favor of dismissal, with the third being that petitioner "has failed to present evidence on his Breach of Contract and Estoppel claims." Although section E of that response addresses the breach of contract claim, petitioner failed to include argument, citation to legal authority, or analysis to address the estoppel claim.

As this Court previously set forth,

> [i]f the moving party makes a properly supported motion for summary judgment and can show by affirmative evidence that there is no genuine issue of a material fact, the burden of production shifts to the nonmoving party who must either (1) rehabilitate the evidence attacked by the moving party, (2) produce additional evidence showing the existence of a genuine issue for trial, or (3) submit an affidavit explaining why further discovery is necessary as provided in Rule 56(f) of the West Virginia Rules of Civil Procedure.

---

[6] A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce the action or forbearance is enforceable notwithstanding the Statute of Frauds if injustice can be avoided only by enforcement of the promise. The remedy granted for breach is to be limited as justice requires. In determining whether injustice can be avoided only by enforcement of the promise, the following circumstances are significant: (a) the availability and adequacy of other remedies, particularly cancellation and restitution; (b) the definite and substantial character of the action or forbearance in relation to the remedy sought; (c) the extent to which the action or forbearance corroborates evidence of the making and terms of the promise, or the making and terms are otherwise established by clear and convincing evidence; (d) the reasonableness of the action or forbearance; (e) the extent to which the action or forbearance was foreseeable by the promisor.

Syl. Pt. 3, *Everett*.

Syl. Pt. 3, *Williams v. Precision Coil, Inc.*, 194 W. Va. 52, 459 S.E.2d 329 (1995). In its summary judgment order, the circuit court found that petitioner abandoned his estoppel claim because he failed to meet his affirmative obligation to present evidence to the contrary as required to survive a motion for summary judgment. Upon our review of petitioner's response to respondent's motion for summary judgment below, it is apparent that petitioner failed to assert argument to rebut respondent's claim that it was entitled to summary judgment on petitioner's estoppel claim. Therefore, we agree with the circuit court that respondent was entitled to summary judgment on that claim.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** April 7, 2017

**CONCURRED IN BY:**

Chief Justice Allen H. Loughry II
Justice Margaret L. Workman
Justice Menis E. Ketchum

**DISSENTING:**

Justice Robin Jean Davis
Justice Elizabeth D. Walker