**FILED**

**January 18, 2022**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

**Cross Fire, Incorporated and
Judy A. Greybeal,
Plaintiffs Below, Petitioners**

**vs.)  No. 21-0042** (Raleigh County CC-41-2020-C-192)

**Contura Energy, Inc.,
Defendant Below, Respondent**

## MEMORANDUM DECISION

Petitioners Cross Fire, Incorporated and Judy A. Greybeal, by counsel Joshua T. Thompson, appeal the Circuit Court of Raleigh County's December 22, 2020, order granting respondent's motion to dismiss and denying petitioners' motion to amend. Respondent Contura Energy, Inc., by counsel Michael D. Mullins and Robert L. Bailey, filed a response in support of the circuit court's order.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

Petitioner Cross Fire, Incorporated ("Cross Fire") and Republic Energy ("Republic") entered into a "Hauling and Delivery Agreement" on September 25, 2014, for Cross Fire to haul coal for Republic. Cross Fire also entered into a hauling and delivery agreement with Pioneer Fuels Corporation ("Pioneer") on October 31, 2014. As the circuit court found, the two contracts are almost identical, with minor non-substantive exceptions. It noted that the

> only difference of relevance to this lawsuit is the fact that the Republic contract contained a provision which permitted either party to terminate the agreement by providing the opposing party a fifteen (15) day notice of the parties' desire to terminate, while the Pioneer contract contained the same language but the period for notice of termination was ninety (90) days.

The circuit court found it was undisputed that both contracts were signed by Petitioner Judy A. Greybeal in her capacity as President of Cross Fire. It was also undisputed that neither of the

1

contracts identify Respondent Contura Energy, Inc., ("Contura") as a party. By letter dated February 7, 2020, James Wood III (President of Republic and Pioneer) notified Cross Fire that Pioneer and Republic were providing "notification of the termination of the aforementioned agreement(s) . . . pursuant to Section Three (3) of the Agreement(s)."

On May 18, 2020, petitioners filed suit against Contura, the parent company of Republic and Pioneer, based upon the alleged breach of the hauling agreements. Contura moved to dismiss petitioners' complaint, pursuant to Rule 12(b)(6) of the West Virginia Rules of Civil Procedure, and petitioners opposed that motion. Petitioners sought to amend their complaint to add Republic and Pioneer as defendants below, in addition to seeking to amend their factual statements. Petitioners also sought to add a claim of promissory estoppel, asserting that they spent millions of dollars in reliance upon the contracts at issue. Contura opposed that motion. Following a September 8, 2020, hearing on those motions, the circuit court entered its December 22, 2020, "Order Denying [Petitioners'] Motion to Amend Complaint and Granting [Contura's] Motion to Dismiss."

According to the circuit court, "[a]lthough the terms of the contracts speak for themselves, the parties disagree on the legal application of the terms." Before the circuit court, petitioners argued that Contura exercises complete control over Pioneer and Republic, that every invoice for payment received by Cross Fire related to the contracts was issued by Contura, and that the notice of termination was signed by the general manager of Contura. Petitioners asserted that because Contura controls Republic and Pioneer, Contura prepared the invoices for Republic and Pioneer, and Contura sent the notice of termination, petitioners should be able to proceed against Contura despite the fact that Contura was not named in the contracts. Contura, however, argued that the clear language of the contracts limits the application of the contracts to the named parties.

In its December 22, 2020, order, the circuit court granted respondent's motion to dismiss and denied petitioners' motion to amend. In so doing, the circuit court explicitly found that the contracts clearly and unambiguously place all parties on notice that the contract is exclusively for the benefit of the parties named in the contracts. It specifically found that "[t]he contract goes further to solidify this principle by stating that the contracts are to the exclusion of any third party beneficiaries." The circuit court also determined that for Cross Fire to prevail on its breach of contract claim as alleged, the facts must show that Contura terminated the contracts. The court concluded "the fact that the termination letter was on Contura letterhead does not have any legal impact on the issues currently before the [c]ourt when evaluating the issues under either the [c]omplaint or the proposed [a]mended [c]omplaint. It is the content of the letter that determines the outcome."

The circuit court went on to find that assuming, arguendo, the notification letter terminated the contracts immediately, as argued by petitioners, in order to prevail on their claim for breach of contract, petitioners must also be able to show that they suffered damages as a result of the breach. While petitioners asserted that they suffered financial losses as a result of the alleged breach, the circuit court found that petitioners had not provided evidence to support those allegations. It further found that

[w]hile [petitioners] may argue that discovery is not complete in this case, that

2

argument does not address the first requirement for a recovery of damages. [Petitioners] must present a valid legal basis for the damages to be considered. In the present case, [Contura] argue[s] that the nature of the contracts themselves, prevent [petitioners] from having any legal basis to claim damages.

In addition, the circuit court held that the contracts plainly notify Cross Fire that it shall not have the right to anticipate or expect any minimum amount of work based upon the mine owner's right to phase down, close down, or otherwise modify its operations. It found, based upon the contracts, that the "only damages available to Cross Fire would be any damages incurred [] prior to the termination of the contracts and Cross Fire has not alleged any breach of the contract prior to the termination. Therefore, Cross Fire has failed to properly assert a claim for any monetary damages."

In addressing petitioners' promissory estoppel argument, the circuit court considered the proposed amended complaint, noting that petitioners alleged therein that they relied upon Contura's obligation to comply with the notice requirements set forth in the agreement to their detriment. The circuit court found that that was merely a rewording of petitioners' breach of contract claim and does not set forth any alleged promise by Contura outside of the express terms of the contract. The circuit court specifically found that "[t]o allow [petitioners] to proceed on the theory of promissory estoppel based upon the vague, general allegations without having provided any evidence of a promise or representation being made exclusive of the contract language would be contrary to the law."[1] Petitioners appeal from that order.[2]

As this Court has found, "'[a]ppellate review of a circuit court's order granting a motion to dismiss a complaint is *de novo*.' Syllabus point 2, *State ex rel. McGraw v. Scott Runyan Pontiac-Buick, Inc.*, 194 W. Va. 770, 461 S.E.2d 516 (1995)." Syl. Pt. 1, *Newton v. Morgantown Mach. & Hydraulics of W. Va., Inc.*, 242 W. Va. 650, 838 S.E.2d 734 (2019). In addition,

"'[a] trial court is vested with a sound discretion in granting or refusing

---

[1] In denying petitioners' motion to amend their complaint, the circuit court determined that granting the motion "would not alter the application of the law or alter the [c]ourt's ruling herein." Petitioners do not directly assert that the circuit court erred by denying their motion to amend their complaint. In addition, they do not set forth any legal authority to support such an argument.

[2] We remind petitioners' counsel of his duty to comply with the West Virginia Rules of Appellate Procedure. Rule 10(c)(4) requires that a petitioners' brief "shall contain" the following:

*Statement of the Case*: Supported by appropriate and specific references to the appendix or designated record, the statement of the case must contain a concise account of the procedural history of the case and a statement of the facts of the case that are relevant to the assignments of error.

Petitioners' four-sentence Statement of the Case falls woefully short of complying with this Rule, including the failure to cite to the record.

leave to amend pleadings in civil actions. Leave to amend should be freely given when justice so requires, but the action of a trial court in refusing to grant leave to amend a pleading will not be regarded as reversible error in the absence of a showing of an abuse of the trial court's discretion in ruling upon a motion for leave to amend.' Syllabus point 6, *Perdue v. S.J. Groves & Sons Co.,* 152 W. Va. 222, 161 S.E.2d 250 (1968)." Syllabus Point 2, *Lloyd's, Inc. v. Lloyd*, 225 W. Va. 377, 693 S.E.2d 451 (2010).

Syl. Pt. 4, *Johnson v. Pinson*, 244 W. Va. 405, 854 S.E.2d 225 (2020).

On appeal, petitioner sets forth three assignments of error.[3] First, they take issue with the circuit court's finding that the contracts at issue are clear and unambiguous. According to petitioners, the termination clause in each of the contracts is at issue. The Republic contract provides, "[n]otwithstanding any other provision of this Agreement, either party may terminate this Agreement for any reason or no reason at all upon no less than fifteen (15) days' prior written notice to the other party." The language is identical in the Pioneer contract, except that the Pioneer contract requires a written notice of termination at least ninety days prior to that termination. The contracts also provide that petitioners "shall not have any exclusive rights to perform hauling services for [the mine owner]." They further provide that the mine owner "cannot and does not guarantee a minimum or maximum tonnage of daily, monthly, or annual haulage . . . ." Petitioners contend that these contractual provisions are in opposition to one another, arguing that "[n]othing could be less clear and unambiguous than one section of a contract specifically not guaranteeing any work, followed by a section guaranteeing fifteen (15) and ninety (90) days of work prior to termination." Petitioners assert that they should be allowed to conduct discovery "to try and make sense of these two purposely misleading contracts upon which they relied."

---

[3] We note that petitioners' arguments do not comply with Rule 10(c)(7) of the West Virginia Rules of Appellate Procedure. That rule provides that

[t]he brief must contain an argument exhibiting clearly the points of fact and law presented, the standard of review applicable, and citing the authorities relied on, under headings that correspond with assignments of error. The argument must contain appropriate and specific citations to the record on appeal, including citations that pinpoint when and how the issues in the assignments of error were presented to the lower tribunal. The Court may disregard errors that are not adequately supported by specific references to the record on appeal.

W. Va. R. App. P. 10(c)(7). Additionally, in an Administrative Order entered December 10, 2012, Re: Filings That Do Not Comply With the Rules of Appellate Procedure, the Court noted that "[b]riefs that lack citation of authority [or] fail to structure an argument applying applicable law" are not in compliance with this Court's rules. Further, "[b]riefs with arguments that do not contain a citation to legal authority to support the argument presented and do not 'contain appropriate and specific citations to the . . . record on appeal . . .' as required by rule 10(c)(7)" are not in compliance with this Court's rules.

As we have repeatedly found,

> "'A valid written instrument which expresses the intent of the parties in plain and unambiguous language is not subject to judicial construction or interpretation but will be applied and enforced according to such intent.' Syl. pt. 1, *Cotiga Development Company v. United Fuel Gas Company*, 147 W. Va. 484, 128 S.E.2d 626 ([1962])." Syllabus point 1, *Sally-Mike Properties v. Yokum*, 175 W. Va. 296, 332 S.E.2d 597 (1985).

Syl. Pt. 3, *Miller v. WesBanco Bank, Inc.*, -- W. Va. --, 859 S.E.2d 306 (2021). Further, "'[t]he determination of whether a deed, contract, or other writing is ambiguous and does not clearly express the intention of the parties is a question of law to be determined by the court.' Syllabus point 3, *Harrell v. Cain*, 242 W. Va. 194, 832 S.E.2d 120 (2019)." *Miller*, -- W. Va. at --, 859 S.E.2d at 311, Syl. Pt. 4. We agree with Contura's contention that the termination clauses in these contracts and the clauses expressly disavowing a promise of exclusivity or a promise for any minimum amount of work are not "in complete opposition to one another." Contura asserts that if Republic or Pioneer had given Cross Fire coal to haul, the mine owner could not immediately disavow its obligation to pay Cross Fire for its work at the agreed upon rate or under the agreed upon terms by simply terminating the governing contract without notice—a right the termination clauses protected wholly unrelated to the non-exclusivity/no-minimum clauses. Moreover, it is clear that Contura was not a party to the contracts at issue.[4] For these reasons, we find that the circuit court did not err in determining that the relevant portions of the contracts at issue are clear and unambiguous.

Petitioners next argue that the circuit court failed to consider their promissory estoppel claim. Without citing to the record, petitioners contend that they added resources to their business when it became the first coal hauler to work for Contura's Workman's Creek Mine when it opened. They assert that they spent millions relying on these contracts, which constituted the bulk of petitioners' business. Petitioners claim that they built their business around hauling Contura's coal and a promissory estoppel action "should be allowed and explored vigorously."

---

[4] We also note that a party moving for discovery pursuant to Rule 56(f) of the West Virginia Rules of Civil Procedure must satisfy the following:

> At a minimum, the party making the motion for a continuance must satisfy four requirements. It should (1) articulate some plausible basis for the party's belief that specified "discoverable" material facts likely exist which have not yet become accessible to the party; (2) demonstrate some realistic prospect that the material facts can be obtained within a reasonable additional time period; (3) demonstrate that the material facts will, if obtained, suffice to engender an issue both genuine and material; and (4) demonstrate good cause for failure to have conducted the discovery earlier.

*Powderidge v. Highland Prop., Ltd.,* 196 W. Va. 692, 702, 474 S.E.2d 872, 882 (1996). While petitioners do not address this standard, it is clear that they are unable to meet it.

This Court set out the principles governing the doctrine of promissory estoppel in *Everett v. Brown,* 174 W. Va. 35, 321 S.E.2d 685 (1984), as follows:

> A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce the action or forbearance is enforceable notwithstanding the Statute of Frauds if injustice can be avoided only by enforcement of the promise. The remedy granted for breach is to be limited as justice requires.
>
> In determining whether injustice can be avoided only by enforcement of the promise, the following circumstances are significant: (a) the availability and adequacy of other remedies, particularly cancellation and restitution; (b) the definite and substantial character of the action or forbearance in relation to the remedy sought; (c) the extent to which the action or forbearance corroborates evidence of the making and terms of the promise, or the making and terms are otherwise established by clear and convincing evidence; (d) the reasonableness of the action or forbearance; (e) the extent to which the action or forbearance was foreseeable by the promisor.

Syl. pt. 3, *Everett, id.*

*Hoover v. Moran,* 222 W. Va. 112, 119-20, 662 S.E.2d 711, 718-19 (2008).

Here, Contura asserts that, as the circuit court noted, to articulate a claim of promissory estoppel petitioners were required to identify an extra-contractual promise for a particular amount of work on which petitioners based their decision to purportedly spend money preparing for that work. Contura argues that a claim for promissory estoppel cannot exist if there is a contract governing the same subject matter as the supposed promise. Contura correctly points out that petitioners failed to allege any such promise existed; instead, their claim was based upon, and necessarily relied upon, the existence of the hauling agreements, which specifically provided that no work was guaranteed to petitioners by Republic or Pioneer. Instead, the mine owners promised that Cross Fire would haul whatever coal "[w]as requested by [the mine owners]" pursuant to the included terms. In those contracts, Cross Fire specifically acknowledged that it "shall not have any exclusive rights to perform hauling services for [the mine owners] . . . ." Under the facts of this case, and considering that petitioners fail to point this Court to any proof that they incurred any expenses or relied upon the contracts in incurring such expenses, we find that the circuit court's grant of Contura's motion to dismiss despite petitioners' assertion of a claim of promissory estoppel was not erroneous.

Finally, in an unclear argument, petitioners contend that the circuit court erred by relying upon Black's Law Dictionary in its decision. While petitioners are critical of the circuit court's use of Black's Law Dictionary's definition of "notification," they assert that it should have, instead,

used Black's Law Dictionary's definition of "terminate." Petitioners then request that they be permitted to conduct discovery. As this Court has held, "[a] skeletal 'argument,' really nothing more than an assertion, does not preserve a claim. . . . Judges are not like pigs, hunting for truffles buried in briefs." *State v. Kaufman*, 227 W. Va. 537, 555 n.39, 711 S.E.2d 607, 625 n.39 (2011) (citation omitted). Petitioners' argument as to this assignment of error is not sufficiently clear for this Court to address the merits of it, as they complain about the use of a Black's Law Dictionary definition but assert that the use of that same source should have been used as to a different term. Thus, we decline to attempt to address the merits of this argument.

For the reasons set forth herein, the circuit court's December 22, 2020, order granting Contura's motion to dismiss and denying petitioners' motion to amend their complaint is affirmed.

Affirmed.

**ISSUED:** January 18, 2022

**CONCURRED IN BY:**

Chief Justice John A. Hutchison
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice Evan H. Jenkins
Justice William R. Wooton

7