# IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

**LISA PAXTON,**
**Grievant Below, Petitioner**

**FILED**
**June 15, 2023**

EDYTHE NASH GAISER, CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

**vs.) No. 22-ICA-117**          (Grievance Bd., No. 2021-2342-MAPS)

**WEST VIRGINIA DEPARTMENT OF HOMELAND SECURITY/**
**DIVISION OF EMERGENCY MANAGEMENT, and**
**DIVISION OF PERSONNEL**
**Respondents Below, Respondents**

## MEMORANDUM DECISION

Petitioner Lisa Paxton appeals the August 16, 2022, decision of the West Virginia Public Employees Grievance Board ("Grievance Board"). Respondents West Virginia Department of Homeland Security/Division of Emergency Management, and Division of Personnel filed a joint summary response in support of the Board's order.[1] Ms. Paxton did not file a reply. The issue on appeal is whether the Grievance Board erred in denying Ms. Paxton's grievance regarding her promotion within the Division of Emergency Management ("Emergency Management") following the agency's transfer from the West Virginia Military Authority ("Military Authority") to the Department of Homeland Security ("Homeland").

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2022). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the Grievance Board's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

At all relevant times, Ms. Paxton has been employed by Emergency Management. Moreover, this agency was administered by the Military Authority until enacted legislation placed Emergency Management's administration under Homeland in May 2020. Notably, employees of the Military Authority were classified as at-will, were exempt from the classified and classified-exempt service categories administered by the Division of Personnel, and were excluded from the Grievance Board process. *See* W. Va. Code §§ 15-

---

[1] Ms. Paxton is represented by Anthony Brunicardi, Esq., Walt Auvil, Esq., and Kirk Auvil, Esq. West Virginia Department of Homeland Security/Division of Emergency Management, and Division of Personnel are represented by Jodi B. Tyler, Esq., and Karen O'Sullivan Thornton, Esq., respectively.

1

1J-4(d)(11) (2017) and 15-1J-5(a)(1) (2008). As set forth below, Ms. Paxton's grievance was pending before the Military Authority when Emergency Management was transferred to Homeland, which is subject to the Grievance Board's procedure. As a result, Ms. Paxton was permitted to refile her grievance with the Grievance Board.

On February 26, 2019, Ms. Paxton was promoted by Emergency Management to the SERC Program Coordinator position. At that time, Ms. Paxton began performing the duties related to that position, in addition to others. During this time, she also began working with her supervisors at the Military Authority, David Hoge and Michael Tordovich, to create a new position that would best reflect all the duties and responsibilities that she was being asked to perform. Based on the record, it also appears that Mr. Hoge and Mr. Tordovich exchanged e-mails discussing the availability of funds for a potential pay increase for Ms. Paxton and that she was included in those e-mails. Although no date is provided in the record, at some point after February 26, 2019, but prior to February 24, 2020, the new position of Military Authority Administration/Operations Manager 3 was created, the job listing was posted, and was offered to, and accepted by, Ms. Paxton.[2] This new position carried the working title of Grant Manager.

On February 24, 2020, Mr. Hodge and Mr. Tordovich signed a West Virginia Military Authority Employee Personnel Action Request form ("Personnel Request"). This form reflected Ms. Paxton's placement in the Grant Manager position and noted a new annual salary of $62,900.[3] In addition to Mr. Hodge and Mr. Todorovich, this form's signature block also required the signatures of Christopher P. Cmiel, Director of the Military Authority, and Major General James A. Hoyer, Adjutant General of the Military Authority, to complete the approval process. However, the form provided in the designated record is devoid of those requisite signatures, and it is undisputed that those two signatures were never obtained.

In April 2020, Ms. Paxton filed a grievance against the Military Authority alleging that she had been performing the duties of SERC Program Coordinator since February 2019, and that in February 2020, she was promised the Grant Manager position with a new annual salary but that she had never received any increase in compensation. During the pendency of this grievance, Emergency Management was placed under the administration of Homeland effective, May 28, 2020.

---

[2] The Board's order states that the creation of this position, as well as the hiring of Ms. Paxton occurred in early February 2019. However, this is a typographical error because the record reflects these events transpired sometime after February 26, 2019, but prior to February 24, 2020. The parties' briefs corrected this error.

[3] Ms. Paxton contends that she was promised an annual salary of $69,000, not $62,900. However, this distinction has no bearing on our disposition of this appeal.

Because Homeland is an agency covered by the Division of Personnel ("DOP"), all the Emergency Management positions, including Ms. Paxton's, were required to be changed to classified-exempt positions. When a position is classified-exempt, the DOP must assign each position a job title classification from those already existing within the DOP. Thereafter, the DOP has no further involvement with the agency's management of the position. Notwithstanding the classification assigned by the DOP, it is undisputed that employees' salaries are set at the discretion of the employing agency and that they may deviate from the salary range recommended by the DOP for a given classification. Further, an individual may be hired without meeting the minimum qualifications for a position, and the employing agency may give the position a working title that differs from DOP's job title classification that is recorded in its system. *See generally* W. Va. Code R. § 143-1-4 (2016).

To facilitate the transition from Homeland to Emergency Management, the DOP required that Position Description Forms be completed for each Emergency Management position to assist the DOP in classifying those positions.[4] In response, Ms. Paxton completed the form, detailing the duties and responsibilities of the Grant Manager position. Ms. Paxton's supervisor approved the form before it was submitted to the DOP for classification. The DOP then utilized a job content methodology to find the job title classification that best suited the duties and responsibilities reflected in the Position Description Form and any other appropriate documentation, such as current and former job postings for the position. In the present case, the duties and responsibilities of the Grant Manager position were unique to the Military Authority and not included within the DOP's classification system. Therefore, the DOP was tasked with assigning it a classification that best suited the position. Based on the information provided to the DOP, it determined that the classification of Emergency Services Specialist was the most appropriate designation for Ms. Paxton's Grant Manager position. The DOP reviewed this classification at least two more times. First, upon request of Emergency Management and then following a job audit of Ms. Paxton's position. Ultimately, the DOP stood by the Emergency Services Specialist classification.

Thereafter, Ms. Paxton was permitted to refile her grievance on April 6, 2021, this time against Emergency Management and Homeland. Ms. Paxton's grievance alleged that she had not received the promotion to Grant Manager and its accompanying salary increase that were previously promised to her while Emergency Management was still under the Military Authority. Ms. Paxton also claimed that the DOP did not properly allocate her position, and that the position of Homeland Security Grant Manager was the job title classification that best mirrored the duties and responsibilities of her position with the

---

[4] Pursuant to West Virginia Code of State Rules § 143-1-4.5 (2016), the Position Description Form is the official document detailing the duties and responsibilities of a position that is to be used by the DOP to assign these job title classifications.

3

Military Authority. However, Ms. Paxton would later testify before the Grievance Board that the Grant Manager position was just another name for the SERC Program Coordinator position she had accepted in February 2019, and that she had been performing the duties of the position since that time. She also asserted that the pay scale designated for her current position of Emergency Services Specialist has an annual salary from $27,622 to $51,173, whereas the Homeland Security Grant Manager position has an annual salary between $47,287 and $87,480. Ms. Paxton believed the Homeland Security Grant Manager position best accommodated the $62,900 annual salary that she had been promised. At the time of her proceedings before the Grievance Board, Ms. Paxton's salary was $48,030.

Hearings were held before the Grievance Board on April 26, 2022, and May 27, 2022. On August 16, 2022, the Grievance Board issued its written decision denying Ms. Paxton's grievance. First, the Grievance Board addressed Ms. Paxton's contention that her position had been misclassified by the DOP. It found that Ms. Paxton's position did not meet the classification of Homeland Security Grant Manager, and that the position best fit the classification of Emergency Services Specialist as determined by the DOP.[5]

Next, the Grievance Board addressed Ms. Paxton's claim that her salary was misallocated. The Grievance Board found that Homeland had the discretion to set Ms. Paxton's compensation, and that Homeland had not abused its discretion regarding the $48,030 annual salary it designated for Ms. Paxton. The Grievance Board concluded that based on the evidence, there were seven other employees who were classified as Emergency Services Specialists, and that each of them had similar job duties to Paxton. The average salary for the group was $47,500, and Ms. Paxton was being compensated above that average. Thus, the Grievance Board found that Ms. Paxton's current salary was consistent with similar positions, and that Ms. Paxton had failed to prove an arbitrary or capricious action by Homeland in that regard.

The Grievance Board's order then addressed Ms. Paxton's assertion that she and the Military Authority had a binding contract when she was offered and accepted the Grant Manager position prior to Emergency Management's transition to Homeland. In support, Ms. Paxton argued that Mr. Hoge's and Mr. Todorovich's signatures on the Personnel Request created a binding contract regarding her new position and new salary, and that her DOP classification and current salary constituted a breach of that contract. The Grievance Board found this argument fatally flawed because, pursuant to West Virginia Code § 15-1J-4 (2020), the Military Authority is administered by the Adjutant General, who must

---

[5] In this appeal, Ms. Paxton does not challenge the Grievance Board's finding that the job title classification assigned to her by the DOP was appropriate. Rather, Ms. Paxton's arguments solely rest on her belief that she is entitled to higher compensation.

approve all hirings, promotions, and salaries therein.[6] Thus, because Ms. Paxton's Personnel Request form lacked the Adjutant General's signature, her promotion and increased salary had not received final approval, and, therefore, no such contract existed.

The Grievance Board also determined that the promises Ms. Paxton alleged were made, if true, would be unenforceable as they would constitute invalid *ultra vires* acts. In other words, it was determined that apart from the Adjutant General, neither Mr. Hoge, Mr. Todorovich, nor any other party within the Military Authority had the authority to promise Ms. Paxton the promotion or pay increase, let alone the authority to implement the same. Thus, the Grievance Board concluded that the doctrine of *ultra vires* prohibited the state or one of its political subdivisions from being bound by the unauthorized acts of its officers, and as a result, no contractual obligation was created between the Military Authority and Ms. Paxton for a promotion or pay increase.[7]

The final issue addressed by the Grievance Board was Ms. Paxton's argument that the doctrine of promissory estoppel required Homeland to honor the acts of her Military Authority supervisors, whom she maintained were its agents. In support, Ms. Paxton argued that in exchange for her performing more duties and responsibilities, she was specifically promised a pay increase and promotion, and that she assumed the increased duties and responsibilities in reliance upon those promises. In its order, the Grievance Board concluded that there was virtually no change in Ms. Paxton's duties and responsibilities for her position when Emergency Management transferred to Homeland, that DOP and Homeland found her current salary was appropriate for her position, and that as a result, she had suffered "little or no harm" from her proposed pay increase not receiving final approval and implementation by the Military Authority.

Ultimately, the Grievance Board denied Ms. Paxton's grievance, finding that she had failed to prove her claims by a preponderance of the evidence. The Grievance Board entered its order on August 16, 2022, and this appeal followed. Our governing standard of review for a contested case from the West Virginia Public Employees Grievance Board is as follows:

---

[6] Generally, West Virginia Code § 15-1J-4 provides, among other things, that the Military Authority was established to administer national security, homeland security, and other military-related or sponsored program, and that the Adjutant General is charged with its administration.

[7] While we agree with the Grievance Board's application of the doctrine of *ultra vires* to this case, Ms. Paxton's brief fails to develop this argument on appeal despite raising it as an assignment of error. *See infra* n.8.

> A party may appeal the decision of the administrative law judge on the grounds that the decision:
> (1)     Is contrary to law or a lawfully adopted rule or written policy of the employer;
> (2)     Exceeds the administrative law judge's authority;
> (3)     Is the result of fraud or deceit;
> (4)     Is clearly wrong in view of the reliable, probative, and substantial evidence on the whole record; or
> (5)     Is arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

W. Va. Code § 6C-2-5 (2007); *accord* W. Va. Code § 29A-5-4(g) (2021) (specifying the standard for appellate review of administrative appeal). Likewise, "[t]he 'clearly wrong' and the 'arbitrary and capricious' standards of review are deferential ones which presume the agency's actions are valid as long as the decision is supported by substantial evidence or by a rational basis." Syl. Pt. 3, *In re Queen*, 196 W. Va. 442, 473 S.E.2d 483 (1996). *See also,* Syl. Pt. 1, in part, *In Re Tiffany Marie S.*, 196 W. Va. 223, 470 S.E.2d 177 (1996) (on appeal, a court may not overturn a finding simply because it would have decided case differently); Syl. Pt. 1, *Francis O. Day Co., Inc., v. Dir. Div. of Env't Prot.*, 191 W. Va. 134, 443 S.E.2d 602 (1994) (evidentiary findings should not be reversed unless clearly wrong). With these principles in hand, we now turn to this instant appeal.

At the outset, we find that only Ms. Paxton's breach of contract and promissory estoppel claims are properly before this Court; therefore, they are the only issues to be addressed in this appeal.[8] Accordingly, we will address these arguments in turn.

---

[8] We note that Ms. Paxton's brief identifies several assignments of error related to the Grievance Board's decision, including breach of contract, promissory estoppel, fraudulent and negligent contractual misrepresentation, and the application of the doctrine of *ultra vires*. However, the fraudulent and negligent contractual misrepresentation claims were not raised before the Grievance Board, nor addressed in its order. Because those issues are being raised for the first time on appeal to this Court, we decline to address the same. *See e.g., Whitlow v. Bd. of Educ. Of Kanawha Cnty.*, 190 W. Va. 223, 226, 438 S.E.2d 15, 18 (1993) (noting as general rule, when nonjurisdictional questions are first raised on appeal, they will not be considered). Further, Ms. Paxton also raises the Grievance Board's application of *ultra vires* as an assignment of error, but because her brief fails to further address this alleged error, we deem the same waived. *See* Syl. Pt. 6, *Addair v. Bryant*, 168 W. Va. 306, 307, 284 S.E.2d 374, 376 (1981) ("[a]ssignments of error that are not argued in the briefs on appeal may be deemed by this Court to be waived."); W. Va. R. App. P. 10(c) (stating this Court may disregard errors not adequately supported by specific references to the appellate record). Therefore, we will only address those assignments of errors that were properly identified with corresponding headings and directly addressed in the argument section of the brief.

First, we address Ms. Paxton's breach of contract argument. In West Virginia, it is well-established that "a claim for breach of contract requires proof of the formation of a contract, a breach of the terms of that contract, and resulting damages." *Sneberger v. Morrison*, 235 W. Va. 654, 669, 776 S.E.2d 156, 171 (2015); *Mountaineer Fire & Rescue Equip., LLC v. City Nat'l Bank of W. Va.*, 244 W.Va. 508, 529 n.8, 854 S.E.2d 870, 891 n.8 (2020). It is unmistakable that no breach can occur absent the existence of a valid contract. Thus, we find that our analysis must begin here. To that end, it is fundamentally accepted that, "[t]he elements of a contract are an offer and an acceptance supported by consideration." *Dan Ryan Builders, Inc. v. Nelson,* 230 W.Va. 281, 287, 737 S.E.2d 550, 556 (2012). Stated another way, "[t]he fundamentals of a legal 'contract' are competent parties, legal subject–matter, valuable consideration, and mutual assent. There can be no contract, if there is one of these essential elements upon which the minds of the parties are not in agreement." Syl. Pt. 5, *Virginian Export Coal Co. v. Rowland Land Co.*, 100 W. Va. 559, 560, 131 S.E. 253, 254 (1926).

In this case, Ms. Paxton argues that an enforceable contract was created between the Military Authority and her when she accepted the promotion to Grant Manager, and Mr. Hoge and Mr. Tordovich executed the Personnel Request, which reflected Ms. Paxton's new job title and new salary of $62,900. In Ms. Paxton's view, she has fulfilled her obligations under the contract despite the Military Authority and its predecessor, Homeland, failing to honor its contractual obligation to compensate her at the new salary. Upon review, we find no error in the Grievance Board's ruling.

Like the Grievance Board, we too find that Ms. Paxton's reliance on Mr. Hoge's and Mr. Tordovich's signatures on the Personnel Request was misplaced. West Virginia Code § 15-1J-4 provides, "[t]he [Military] [A]uthority will be administered by the Adjutant General of the West Virginia National Guard[,]" whom "shall have . . . all powers . . ., including the authority to . . . [h]ire employees at an appropriate salary[.]" *See* W. Va. Code §§ 15-1J-4 (b) and (d)(7). Further, West Virginia Code § 15-1J-5 (2008) provides, "[t]he [Military] [A]uthority shall have the power to hire, administer[,] and manage employees necessary to fulfill its responsibilities[,]" and "the Adjutant General will set appropriate salary rates for employees[.]" *See* W. Va. Code §§ 15-1J-5 (a) and (b). Therefore, as the Grievance Board correctly observed, above all else, the Adjutant General's approval was necessary to effectuate Ms. Paxton's promotion and pay increase. However, as the record indicates this critical event never occurred.

This conclusion is further supported by the Personnel Request. As previously noted, the form's signature block indicates that four signatures were required to complete the approval process. While the form contained signatures from Mr. Hoge and Mr. Tordovich, the required signatures of Christopher P. Cmiel, Director of the Military Authority, and Major General James A. Hoyer, Adjutant General of the Military Authority, were absent. Also, it is undisputed that these signatures were never obtained. In other words, Mr. Hoge's

7

and Mr. Tordovich's signatures were just one step in a larger process to obtain approval for Ms. Paxton's promotion and accompanying pay increase. Because the Personnel Request lacks the approval of not only Mr. Cmiel, but most importantly, the approval of Adjutant General Hoyer, there was no mutual assent or meeting of minds between the parties. Therefore, because the Personnel Request fails to establish that there was a meeting of minds as to its terms, there was no binding contract formed between Ms. Paxton and the Military Authority. Moreover, Military Authority actions aside, it is undisputed that Homeland had the discretion to compensate Ms. Paxton above the salary range listed for her DOP classification but that it elected to not exercise that discretion. As a result, we find no error in the Grievance Board's conclusion that Homeland's salary determination for Ms. Paxton was neither arbitrary nor capricious.

Lastly, Ms. Paxton argues that the Grievance Board erred by not applying the doctrine of promissory estoppel as an alternative remedy for relief.[9] Here, Ms. Paxton avers that despite concluding no contract existed between the parties, the Grievance Board erred by not using promissory estoppel to alternatively award Ms. Paxton the annual salary that was promised to her because she had relied upon that promise when carrying out the duties and responsibilities of her position. We disagree.

We find that resolution of this issue does not require us to engage in a promissory estoppel analysis. Rather, we find that Ms. Paxton's argument fails to recognize the general rule "that [promissory] estoppel may not be invoked against a governmental unit when functioning in its governmental capacity." *Cunningham v. Cnty. Ct. of Wood Cnty.*, 148 W. Va. 303, 309-10, 134 S.E.2d 725, 729 (1964); *Freeman v. Poling*, 175 W. Va. 814, 819,

---

[9] Upon review, the Grievance Board incorrectly relied upon the factors for an equitable estoppel analysis to rule on Ms. Paxton's promissory estoppel argument. The standard for equitable estoppel is not the same standard that is used for a promissory estoppel analysis. *Compare* Syl. Pt. 6, *Stuart v. Lake Wash. Realty Corp.*, 141 W. Va. 627, 628, 92 S.E.2d 891, 893 (1956) (setting forth factors for equitable estoppel analysis), *with* Syl. Pt. 3, *Everett v. Brown*, 174 W. Va. 35, 36, 321 S.E.2d 685, 686 (1984) (setting forth factors for promissory estoppel analysis). Nevertheless, we find that the Grievance Board ultimately reached the correct conclusion, and, therefore, we decline to find error in its decision to not apply promissory estoppel to this case. *See* Syl. Pt. 3, *Barnett v. Wolfolk*, 149 W. Va. 246, 140 S.E.2d 466 (1965) (holding appellate court may affirm on any grounds that are apparent from the record regardless of theory or reason used by lower court); *Cadle Co. v. Citizens Nat'l Bank*, 200 W. Va. 515, 518, 490 S.E.2d 334, 336 (1997) (noting that where the trial court reaches the correct result based upon the wrong reason, the Court will affirm the trial court.); *Hallman-Warner v. Bluefield State College*, No. 22-ICA-38, 2023 WL 2367454, at *n.4 (W. Va. Ct. App. March 6, 2023) (memorandum decision) (affirming circuit court's order because it reached the correct conclusion notwithstanding its reliance on erroneous reasoning).

338 S.E.2d 415 (1985) (citing general rule that promissory estoppel cannot be used against government agency acting in its governmental capacity); *Pryor v. Gainer*, 177 W. Va. 218, 224 n.7, 351 S.E.2d 404, 410 n.7 (1986) (noting promissory estoppel *per se* cannot be used against the State when acting within its governmental capacity); *Phillips v. W. Va. Dep't of Health and Human Res.*, No. 19-0610, 2020 WL 3408421, at *5 (W. Va. June 18, 2020) (memorandum decision) ("'promissory estoppel *per se* cannot be urged against the State when functioning in its governmental capacity.'") (quoting *Pryor*, 177 W. Va. at 224 n.7, 351 S.E.2d 410 n.7). In this case, the record is devoid of any evidence that the Military Authority or Homeland were not acting within their governmental capacities in relation to Ms. Paxton's salary increase. Rather, the evidence shows, at best, that Mr. Hoge and Mr. Tordovich proposed a pay raise for Ms. Paxton, but the raise was not given final approval by the Adjutant General. Likewise, it is undisputed that Homeland possesses discretion regarding its employees' compensation, and, thus, Homeland was clearly acting within its governmental capacity when it determined Ms. Paxton's current salary. Therefore, Ms. Paxton is not entitled to rely upon the doctrine of promissory estoppel for relief.

Accordingly, we find no error or abuse of discretion and hereby affirm the Grievance Board's order.

Affirmed.

**ISSUED:** June 15, 2023

**CONCURRED IN BY:**

Chief Judge Daniel W. Greear
Judge Thomas E. Scarr
Judge Charles O. Lorensen